Florence **MERCER**, Plaintiff-Respondent,

v.

**ROWE FORD SALES et al., Defendants-Appellants.**

**No. 33205.**

St. Louis Court of Appeals.

Missouri.

Sept. 16, 1969.

Smith & Colson, David L. Colson, Farmington, for defendants-appellants.

G. C. Beckham, Steelville, for plaintiff-respondent.

LYON ANDERSON, Special Commissioner.

This is an appeal by Rowe Ford Sales, a partnership, and its compensation insurance carrier, Truck Insurance Exchange, from a judgment of the Circuit Court of Washington County, affirming an award of the Industrial Commission in favor of Florence Mercer, widow of Carric Mercer, alleged to be an employee of Rowe Ford Sales and who, it is alleged, died as a result of an accident arising out of and in the course of his alleged employment.

The first point urged on this appeal is that the finding that Carric Mercer was an employee of Rowe Ford Sales at the time he met his death is not supported by competent and substantial evidence upon the whole record.

Carric Mercer, husband of Florence Mercer, died as a result of a collision between a car he was driving and an automobile being operated by another. The collision occurred on the evening of December 30, 1964, on Highway 47 in Washington County. Mercer died the same evening at a hospital in Bonne Terre. At the time of the accident Mercer was driving a new Ford automobile belonging to Rowe Ford Sales. Florence Mercer was totally dependent upon Carric Mercer at the time of his death.

Rowe Ford Sales is a partnership engaged in selling automobiles. It has a franchise from Ford Motor Company for the sale of Ford Motor products. Its place of business is at Malden, Missouri. The partners who own and operate the business are Perry Staats and Webster Rowe. The partnership was formed the latter part of August, 1964. Mr. Rowe resides at Malden, and devotes full time to the partnership business as manager. During 1964 Mr. Staats resided at Cuba, Missouri. He spent about two days a week at the partnership place of business in Malden in connection with the partnership business. It further appears from the evidence that Mr. Staats, during the year 1964 and for several years prior thereto owned and operated three drug stores. One of these stores was at Cuba in Crawford County, another at Bourbon in Crawford County, and one at Sullivan in Franklin County. He also owned and operated a farm and was in the investment business at Indian Hills, near Cuba.

Carric Mercer started to work for Mr. Staats on a part time basis in 1957. In 1958 and thereafter he was employed full time. His duties were that of a maintenance man. He fixed furnaces when necessary. He would clean a drug store, make repairs on rental property, repair and maintain farm equipment and do farm work. He would also mow Mr. Staats' lawn and take care of Mr. Staats when the latter was not feeling well. He would drive cars for Mr. Staats and do anything Mr. Staats requested him to do.

Mercer's salary was $90.00 per week. He was paid weekly by a check drawn on Mr. Staats' bank account for the amount of his salary less withholding tax and Social Security Tax. For 1964 Mercer's gross salary was $4,320.00. He was not paid for one week he was away on a hunting trip, and for three weeks he was off work due to a shoulder injury.

During the last four months of 1964, Mr. Staats sold for the partnership, approximately twenty-five new automobiles and twenty-five used automobiles in the neighborhood of Bourbon. Upon a sale being made partnership invoices were executed and only the partnership received the benefits of said transactions. Neither Mr. Staats nor the partnership kept automobiles at Cuba or Bourbon, and for that reason it was necessary to hire men to drive cars back and forth between Cuba and Malden and between Bourbon and Malden. These men were not regular employees and were paid for each trip by Mr. Staats. Mr. Staats would then make claim against the partnership for the amount paid each driver which claim included compensation for the driver's service and

for expenses incident to his trip. Other items laid out for the partnership by Mr. Staats would also be included. The claim was presented to the bookkeeper but was not itemized. It merely specified the total amount expended. The bookkeeper would then enter the amount claimed on the General Journal of the partnership as an account payable.

On five or six occasions during the last four months of 1964, Mr. Mercer made five or six trips from Bourbon to Malden for the purpose of delivering automobiles to Rowe Ford Sales. On each trip he would bring back an automobile to Bourbon, or to Cuba. He also made trips to Fredericktown. These trips were made at the request of Mr. Staats, and were in furtherance of the partnership business. Mr. Staats gave the following testimony with reference to these trips.

"Q. After you got into the automobile business with Mr. Rowe there in September of 1964 did Mr. Mercer ever perform any service for the partnership?

"A. Yes, he did.

"Q. Would you tell the court just what he did?

"A. I would sell a car. He would deliver that car, pick up the trade-in car, drive that to wherever I might have told him to, and anything pertaining to the business, the automobile business he did what I told him.

"Q. Now in that connection did he ever drive automobiles back and forth from Bourbon to Malden?

"A. Yes, he has.

"Q. Could you tell us about how many trips he made during those last four months of 1964?

"A. I am sure of five. Maybe it would be more. That I wouldn't want to put a definite figure on it. But he has made other trips for us. In fact he has drove to Fredericktown and picked up cars and back.

"Q. Then there in the community of Bourbon and Cuba did he on occasions perform any services for the partnership or not?

"A. Yes, he would

"Q. What were some of the things he would do?

"A. Some of the things he would do would go to a customer and pick up the car when it needs to be checked, he would pick up a car, drive it to me or if I would deliver a car he would pick up the used car and maybe drive it to Bourbon or maybe we would leave it at Bourbon a few days until we would either dispose of it or take it to Malden.

"Q. Did he ever do any work in the way of cleaning up these cars?

"A. Yes, he did.

"Q. Getting them ready for sales?

"A. Right.

"Q. When he was up in the Bourbon and Cuba neighborhood who would give him instructions with reference to this work he was going to do for the partnership?

"A. Any business pertaining to the Rowe Ford Agency up in our neighborhood I was in charge of.

"Q. You gave him instructions?

"A. Yes, I did.

\*　　\*　　\*　　\*　　\*　　\*

"Q. When you gave Mr. Mercer instructions about work he was to do for the partnership were you giving him instructions in your capacity as a drug store operator or in your capacity as one of the partners of Rowe Ford Sales?

\*   \*   \*   \*   \*   \*

"A. I would act on the basis that I was half owner of this Rowe Ford agency and I would tell him to do so in that capacity."

Mr. Rowe testified that when Mercer drove down to the place of business at Malden, he would give Mercer directions as to what to do and instruct Mercer as to what automobile he was to drive back to Bourbon. He further testified:

"Q. When he would come to your place of business there who would give him instructions as to what to do?

"A. I would give him instructions if he come by himself. If Mr. Staats would happen to be there \* \* \* both of us would probably instruct him.

"Q. If Mr. Staats was not there you gave him instructions on what to do?

"A. Right."

Mr. Rowe found it unnecessary to instruct Mr. Mercer as to the route he should take in transporting cars for the partnership, except for his first trip. On this point Mr. Rowe testified:

"Q. Would you for instance tell him which way he was supposed to go to return the car back to Bourbon?

"A. One night at eleven o'clock when he left down there that was his first trip and I picked him up at Fredericktown, Missouri, and carried him to Malden to pick up a new car. It was eleven o'clock at night when he left Malden. That was his first (sic) trip. I tried to draw it out for him at that time. That is the only time I had to explain to him how to get back."

Mr. Mercer was kept on Mr. Staats' regular payroll, and received his regular pay each week, except for the four weeks he was off from work during 1964. For each day he worked for the partnership, except for the last day, Mr. Staats would include in his claim for money expended for the partnership, $15.00 compensation for Mercer's services plus $5.00 for expenses. These sums would be included in the amount credited to Mr. Staats on the partnership books. Mr. Rowe testified he knew of this practice and that it was satisfactory to him. His testimony as shown in the transcript as to this matter is as follows:

"Q. Mr. Rowe, did you know that Mr. Mercer was receiving a certain amount or had been promised a certain amount for making these trips?

"A. Yes, \* \* \* approximately $15.-00 was about what it amount to. I don't know the specific amount.

"Q. You knew prior to December 30th, 1964 when Mr. Mercer came down and picked up the automobile and took it back that you were eventually at some time or other to pay $15.00 for picking up that automobile and taking it back to Bourbon?

"A. Yes, or more. $15.00 or more.

"Q. Counting expenses, and so forth?

"A. Yes."

After Mr. Mercer's death a check for $14.46 was issued by the partnership payable to Mr. Mercer. This payment was for services for his last day's work. It was for the amount due less fifty-four cents Social Security Tax withheld. This check was delivered to Mrs. Mercer. This check was paid and introduced in evidence. It was endorsed, "Carric Mercer" by Florence Mercer.

The evidence as to what took place on December 30, 1964 is not in dispute. Mr. Staats had in his possession an automobile belonging to Rowe Ford Sales which he used as a demonstrator. Some defect in the transmission had developed, and on that day Mr. Staats directed Mercer to drive the car to Steelville to have it repaired.

Mercer did this, but after arriving at the place where the contemplated repairs were to be made he was informed that it would be necessary to remove the transmission, and that it would take six or eight days to make the repairs. Mercer then contacted Mr. Staats who directed him to take the car to Rowe Ford Sales at Malden. Mercer· then left for Malden and upon his arrival there delivered the car as he had been instructed to do. He arrived at Malden about 3:00 P.M. Mr. Rowe then directed him to drive a new car, a 1965 Fairlane, to Bourbon for the purpose of sale. This car was owned by Rowe Ford Sales. Mercer left Malden between five and six o'clock in the afternoon. Bourbon is about 180 miles from Malden. On account of the condition of the roads between these two towns a trip usually would take eight or nine hours. Late that evening Mercer met his death as a result of the head-on collision heretofore mentioned.

Appellants contend that the evidence failed to show that Carric Mercer, who was under the general employment of Mr. Staats was an employee of Rowe Ford Sales, within the coverage of the Workmen's Compensation Law, at the time of his fatal accident, and for that reason the finding of the Industrial Commission was not supported by competent and substantial evidence. In support of this contention it is urged (1) that the evidence failed to show a contract of hire, either express or implied, and (2) that he was not an employee of the partnership under appointment or election for the reason that no inference can be drawn from the evidence that Mr. Mercer elected or consented to such relationship while performing services which were beneficial to Rowe Ford Sales no different from those performed by him for Mr. Staats prior to the formation of the partnership.

▪ The word "employee" is defined in our Workmen's Compensation Law, § 287.020, RSMo 1959, V.A.M.S. There it is provided that the term shall be construed, "to mean every person in the service of any employer, as defined in this chapter, under any contract of hire, express or implied, oral or written, or under any appointment or election. * * *" The foregoing definition should be broadly and liberally construed, where reasonably possible, to afford compensation to workmen injured while in the service of another rather than strictly in order to deny compensation. Baldwin v. Gianladis, Mo.App., 159 S.W.2d 706; Patton v. Patton, Mo., 308 S.W.2d 739. It is also well settled law that the relation of employer and employee may be implied or presumed from the acts of the parties, or from circumstances which according to the ordinary course of dealing and understanding of men show an intent to create such relationship. Kelsall v. Riss & Co., Mo.App., 165 S.W. 2d 329; Holmes v. Freeman, Mo.App., 150 S.W.2d 557.

▪ Section 22, Art. V, of our State Constitution, V.A.M.S., requires that the findings of the Industrial Commission be supported by competent and substantial evidence upon the whole record. In determining whether such evidence exists in any particular case the scope of review by the court is limited. The court may not substitute its judgment for that of the Industrial Commission but is authorized to decide only whether the Commission could have reasonably made its findings and reached its decision, upon all the evidence before it, and to set aside its award only if said award is clearly contrary to the overwhelming weight of the evidence. Wood v. Wagner Elec. Corp., 355 Mo. 670, 197 S.W.2d 647; Seabaugh's Dependents v. Garver Lumber Mfg. Co., 355 Mo. 1153, 200 S.W.2d 55.

We proceed to set out the facts developed by the evidence bearing upon the reasonableness of the findings of the Industrial Commission and which tend to disprove the soundness of appellants' contentions.

From the evidence it appears that claimant, at the time of his fatal accident, was performing work which was essentially that of Rowe Ford Sales. These services were in fact different from those performed for his general employer Mr. Staats. He was driving a new car belonging to the partnership at the time of the accident. He was directed by Mr. Rowe, one of the partners, to drive the car to Bourbon for sale there. On his trip to Malden he also drove a car that belonged to the partnership. He was directed to do this by Mr. Staats, an active partner in the operation of Rowe Ford Sales. This car was a demonstrator used by Mr. Staats in partnership business. Mr. Mercer had driven cars belonging to the partnership back and forth between Malden and the vicinity of Cuba on at least five or six occasions. These cars belonged to the partnership. He would sometimes, when a sale was made in the neighborhood of Cuba or Bourbon, pick up a car from a customer of the partnership and take it to Bourbon, where it would remain a few days until it was either disposed of or taken to Malden. He would get these cars ready for sale by cleaning them. Mr. Staats benefited from these transactions as a partner of Rowe Ford Sales. In performing all of the above mentioned services Mr. Mercer would receive directions from Mr. Staats. The latter testified that when he gave Mr. Mercer directions, "I would act on the basis that I was half owner of this Rowe Ford agency and I would tell him to do so in that capacity." Mr. Rowe testified that when Mercer drove down to the partnership place of business he would give Mercer directions as to what to do and instruct Mercer as to what automobile he was to drive back to Bourbon. The partnership paid for claimant's services at the rate of $15.00 per trip plus expenses.

■ The foregoing evidence was competent and substantial, and tended to disprove the appellants' contentions on this appeal. It tended to establish all the elements usually considered sufficient to create the relationship of employer and employee. See Ellegood v. Brashear Freight Lines, 236 Mo.App. 971, 162 S.W.2d 628; Pruitt v. Harker, 328 Mo. 1200, 43 S.W.2d 769. In our opinion the Industrial Commission could reasonably have found from the evidence that Mercer was an employee of Rowe Ford Sales at the time of his death, and that he died as a result of an accident which arose out of and in the course of his employment. We also rule that said finding was not against the overwhelming weight of the evidence. Under these circumstances we cannot disturb the Commission's finding. We cannot substitute our opinion for that of the Commission, if we did have a different opinion. Dickhaut v. Bilyeu Refrigerated Transport Corp., Mo., 441 S.W.2d 54.

■ Appellants further contend that the finding that claimant was entitled to a weekly compensation rate of $38.46 was erroneous for the reason there was no competent evidence upon which to base a finding of an average daily wage. There is no merit to this contention. The Commission could have reasonably found that the daily wage was $15.00. It then became a simple matter to ascertain the weekly compensation rate by applying the method set out in §§ 287.240 and 287.250, V.A.M.S. It appears that in so doing the finding of $38.46 as the weekly compensation rate was proper.

Judgment affirmed.

WOLFE, P. J., BRADY, J., and BRUCE NORMILE, Special Judge, concur.