**Carl HARP, Claimant,**

v.

**MALONE FREIGHT LINES, INC., Employer.**

**No. ED 75799.**

Missouri Court of Appeals, Eastern District, Division Four.

Feb. 22, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 27, 2000.

Application for Transfer Denied May 30, 2000.

Brown & James, P.C., Johnson, T. Michael Ward, Bart B. Zuckerman, St. Louis, for employer.

Swindle and Nunnery, Dale E. Nunnery, Doniphan, for claimant.

HOFF, Judge.

Malone Freight Lines, Inc. (Malone) appeals from the decision of the Labor and Industrial Relations Commission (Commission) that Carl Harp (Carl)[1] was Malone's employee under Section 287.020.1 RSMo 1994.[2] We affirm.

Dan Harp (Dan) owns a truck and is in the business of transporting freight on behalf of contract or common carriers. Malone and Dan entered into an Independent Operating Agreement (operating agreement) designating Dan as an independent contractor. As part of the agreement, he contracted the use of his truck and equipment to Malone, an interstate common and contract carrier.

Dan suggested his brother, Carl, call Malone regarding employment. Carl called Malone and filled out an Application for Lease/Independent Contract Operator Information which included an agreement (lease application and agreement). The application included Carl's employment record for the past ten years, his driving record, educational background, military status, and general information. At Malone's direction, for about three days Carl watched instructional films, took Department of Transportation tests, and submitted to a drug test for Malone. After completing the paperwork and the tests, Carl received a Malone driver's card.

Carl then began hauling loads for Malone. The truck Carl used was owned by Dan, and the trailers he pulled were owned by Malone. Carl was required to contact Malone two or more times a day by using an 800 number. If he did not contact Malone, he received a financial penalty. While working for Malone, Carl was not allowed to make any personal trips. When Carl picked up a load, he received an advance from Malone to pay for his fuel. To pay Carl, Malone deposited money into Dan's account. Dan kept a percentage of that money for supplying the truck, and sent Carl the remainder of that money.

On July 9, 1996, Carl injured his neck while delivering a load for Malone. He called Malone to report his injury and subsequently filed a worker's compensation claim.

The Administrative Law Judge (ALJ) held Carl was an employee of Malone and entered a temporary or partial award in Carl's favor and against Malone. In a unanimous decision, the Commission adopted the ALJ's temporary and partial award. This appeal followed.

Usually a temporary or partial award may not be appealed. *Cahall v. Cahall*, 963 S.W.2d 368, 371 (Mo.App. E.D. 1998). "However, appellate review on the issue of liability in a workers' compensation case is permissible although an award

1. We do not mean to be disrespectful by referring to the parties by their first name, we do this to distinguish between Carl and Dan Harp.

2. All subsequent statutory citations are to RSMo 1994, unless otherwise indicated.

is denominated 'temporary or partial.'" *Id.* Because the only issues raised on appeal address Malone's liability, we have jurisdiction over this appeal from a temporary or partial award.

■ In its first point, Malone argues the Commission erred in concluding Carl was Malone's employee because Section 287.020.1 exempts over-the-road drivers of trucks leased to common carriers, regardless of whether or not the driver owns the truck, from the statutory definition of "employee." Specifically, Malone contends the Commission erred when it held the exemption does not apply to the driver of a contracted vehicle who has no ownership interest in that vehicle. Malone argues the statutory language indicates the legislature intended to exempt any over-the-road driver who operates trucks leased or contracted to contract and common carriers. Therefore, Malone argues, Carl should be excluded from the definition of "employee." Carl responds, if the legislature intended for him to be exempt, the statute would say simply "operator" rather than "owner and operator."

Section 287.020.1 states:

The word **"employee"** as used in this chapter shall be construed to mean every person in the service of any employer, as defined in this chapter, under any contract of hire, express or implied, oral or written, or under any appointment or election.... The word "employee" shall not include an individual who is the owner and operator of a motor vehicle which is leased or contracted with a driver to a for-hire common or contract motor vehicle carrier operating within a commercial zone as defined in section 390.020 or 390.041, RSMo, or operating under a certificate issued by the transportation division of the department of economic development or by the interstate commerce commission.

In relevant part the Commission stated: "this statute clearly limits the exclusion to individuals who are both owners and operators of the leased motor vehicle. Since [Carl] had no ownership interest in the truck which he was driving for Malone, this section cannot be applied to exclude him as a possible employee."

■ Decisions of the Commission which are clearly the interpretation or application of law, as distinguished from a determination of fact, are not binding upon us and fall within our province of review and correction. *Burgess v. NaCom Cable Co.,* 923 S.W.2d 450, 452 (Mo.App. E.D.1996).

■ We find that this is a case of first impression because the parties have not directed us to and we have not found a Missouri case that has addressed this issue. In matters of statutory construction, the intent of the legislature controls. *Christian Disposal, Inc. v. Village of Eolia,* 895 S.W.2d 632, 633 (Mo.App. E.D. 1995). To determine the legislature's intent, we look to the language of the statute and the plain and ordinary meaning of the words employed. *Id.* Because the statute excludes only those who are a truck "owner *and* operator" (emphasis added) the plain and ordinary meaning of the phrase does not exclude a driver who is an operator but not an owner of the leased or contracted truck.

■ "Missouri law requires the Workers' Compensation Act to be construed liberally with a view to the public welfare ... so as to extend its benefits to the largest possible class and restrict those excluded to the smallest possible class." *Leslie v. School Services and Leasing, Inc.,* 947 S.W.2d 97, 99 (Mo.App. W.D. 1997). Additionally, the law favors a construction of a statute which avoids unjust or unreasonable results. *Maryland Cas. Co. v. General Elec. Co.,* 418 S.W.2d 115, 118 (Mo. banc 1967). If we construe the statute as Malone interprets it, all operators of leased or contracted vehicles would be excluded from the statutory definition of employee, which would exempt the largest possible class from benefits. This interpretation is unjust and unreasonable. Carl does not fall within the statutory exclusion. Point one denied.

In its second point, Malone contends the legislature's amendment of the statute al-

tered the employment status of owner-operators of leased or contracted vehicles, making those vehicles' owners independent contractors and severing any employment relationship between carriers and drivers hired by such a vehicle's owner. Therefore, Malone argues, Carl should be considered an "employee" of the truck's owner, Dan, rather than an employee of Malone. Because no evidence exists in this case to establish Carl was hired by Dan, we do not address Dan's relationship to Carl or the statute's effect on that relationship. Point two denied.

In its third point, Malone contends the Commission erroneously concluded Carl is Malone's employee because the application of the controllable services test shows that Carl is not Malone's employee. Specifically, Malone points out: (1) it did not instruct Carl how to deliver the load, how to do his job, or what route to take; (2) Carl is in a separate and distinct occupation than Malone because Carl is in Dan's business of hauling property while Malone is in the brokerage business; (3) "over-the road" truck driving requires a specialized license, and therefore Carl is a specialist; (4) Malone did not supply the tools and instruments needed to perform work because Dan supplied the truck and additional equipment, and Malone only supplied the trailer; (5) some of Carl's driving was done on behalf of other transportation brokers; (6) Malone never directly paid Carl but paid Dan who then paid Carl; and (7) in the operating agreement with Dan, Malone expressed no employer-employee relationship existed between itself and the driver, and Carl did not know the status of his relationship with Malone.

■ An appellate court will defer to the judgment of the Commission on factual disputes regarding inferences and evidence and will not substitute its own judgment. *Walls by Walls v. Allen Cab Co., Inc.*, 903 S.W.2d 937, 940 (Mo.App. E.D.1995). When passing on the sufficiency of evidence, we must review the record in the light most favorable to the findings to determine whether there is sufficient competent evidence to support the Commission's conclusions. *Staggs v. Venetian Harbor Co.*, 813 S.W.2d 883, 885 (Mo.App. E.D. 1991).

■ "Where the evidence shows that a person to whom a service is rendered has a right to control the performance of the person who renders the service, the relationship of employer and employee is essentially established." *Ceradsky v. Mid–America Dairymen*, Inc., 583 S.W.2d 193, 196 (Mo.App. W.D.1979). The factors to determine if a "right to control" exist are: (1) the extent of control,(2) the actual exercise of control, (3) the duration of the employment, (4) the right of discharge, (5) the method of payment, (6) the degree to which the alleged employer furnished equipment, (7) the extent to which the work is the regular business of the alleged employer, and (8) the employment contract. *Hutchison v. St. Louis Altenheim*, 858 S.W.2d 304, 305 (Mo.App. E.D.1993).

■ We defer to the Commission's findings and agree with the Commission's conclusion that the controllable services test shows Carl was an employee of Malone. Malone did instruct Carl how to deliver the load by requiring him to contact the dispatcher on the 800 number daily, and by giving him detailed instructions on where and when to pick up and deliver loads. Malone furnished all the necessary tools and supplies for Carl except the truck which was supplied by Dan for Malone. Carl was directed by Malone to call Malone, not Dan, if he had a breakdown or accident. Carl drove exclusively for Malone for the five months prior to his injury. Malone did pay Carl indirectly through Dan, however Malone still required Carl to submit load information before he was paid, and Malone advanced Carl money before each trip. Additionally, Malone's regular business included obtaining the transportation of goods by leased or contracted vehicles.

■ Finally, the fact the lease application and agreement between Carl and

Malone did not expressly reference an employer-employee relationship is not conclusive. Section 287.020.1 defines an "employee" as "every person ... under any contract of hire, express or implied, oral or written...." Under its terms, this statute does not require an employment relationship to be express or written. It is "well settled law that the relation of employer and employee may be implied or presumed from the acts of the parties, or from circumstances which according to the ordinary course of dealing and understanding of men show an intent to create such relationship." *Mercer v. Rowe Ford Sales,* 446 S.W.2d 167, 171 (Mo.App. E.D.1969). We find an employment relationship existed between Malone and Carl despite the fact the lease application and agreement between Carl and Malone lacked any express language acknowledging such a relationship.

Malone also contends the operating agreement between Dan and Malone gave Dan the exclusive right to control any work performed by Carl because Dan, Malone urges, paid all operating expenses, hired, fired and paid Carl, set wages, hours and working conditions, and paid for benefits such as workers' compensation coverage. As shown above, Dan did not control Carl's work. Malone instructed Carl how to deliver the loads by giving him detailed instructions and requiring him to contact Malone daily. Malone gave Carl advances before each load, and it was Malone who could terminate Carl by canceling the lease application and agreement upon a thirty-day notice.

Finally, Malone relies on *Porter v. Erickson,* 851 S.W.2d 725 (Mo.App. S.D. 1993), and contends *Porter* is similar to this case. The *Porter* court found the carrier did not control the work of the driver, and therefore the driver was not carrier's employee. *Id.* at 735. Malone contends its level of control over Carl is virtually identical to the degree of control exercised by the carrier in *Porter.*

However, our case is factually distinguishable from *Porter* because Malone had more control over Carl than the carrier had over the driver in *Porter.* In *Porter,* the driver could drive another truck for another carrier; the carrier had no right to select the route driven by the driver; the carrier was not obligated to pay the hotel bill of the driver, and the driver did not have to call the carrier each day. *Id.* at 733–34. Not only did Carl have to call Malone on its 800 number daily, but he was fined by Malone if he failed to do so. Carl worked solely for Malone and did not drive another truck for another carrier. Moreover Malone gave Carl detailed instructions regarding where and when to pick up the loads. Therefore, this case is not analogous to *Porter.* Point three denied.

We find the Commission correctly concluded Carl was an employee of Malone.

Judgment affirmed.

WILLIAM H. CRANDALL, P.J. and JAMES A. PUDLOWSKI, S.J., Concur.