**OWNER OPERATOR INDEPENDENT DRIVERS ASSOCIATION, INC., and Jeffrey Warta, Individually, and on behalf of all similarly situated, Plaintiffs–Appellants,**

v.

**NEW PRIME, INC., d/b/a Prime, Inc., Robert Lowe, Lawana Lowe, and Vera Lowe, Defendants–Respondents.**

No. 25742.

Missouri Court of Appeals,
Southern District,
Division One.

March 29, 2004.

Petition for Rehearing and Transfer
Denied April 20, 2004.

Application for Transfer Denied
May 25, 2004.

Richard E. Davis, Whiteaker & Wilson, P.C., Springfield, Thomas A. Sheehan, Shook, Hardy & Bacon, L.L.P., Kansas City, for Appellant.

R. Lawrence Ward, James C. Sullivan, Richard M. Paul, III, Shughart, Thomson & Kilroy, P.C., Kansas City, John C. Holstein, Shughart, Thomson & Kilroy, P.C., Springfield, for Respondent.

JAMES K. PREWITT, Judge.

The plaintiffs in this case ("Appellants") filed a class action petition against the defendants seeking the return of insurance premiums paid for the procurement of workers' compensation insurance. According to Appellants, New Prime, Inc. ("Prime"), as the alleged employer of Appellants, was responsible for paying workers' compensation premiums and therefore, by requiring Appellants to maintain their own workers' compensation insurance or deducting the cost of premiums from Appellants' pay, Prime was unjustly enriched or committed fraudulent misrepresentation or negligent misrepresentation. Appellants also alleged that Defendants Robert Lowe, Vera Lowe, and Lawana Lowe, all officers and/or directors of Prime, had "disregarded the corporate form and formalities sufficient to pierce the corporate veil." The trial court granted Prime's motion to dismiss, finding that Appellants had no private right of action to enforce § 287.290, RSMo 2000, the section of the Missouri Workers' Compensation Law Appellants alleged Prime had violated, and that Appellants failed to state a claim because Appellants were owner-operators, who are specifically exempted from the definition of employees under § 287.020, RSMo 2000. Appellants raise four points of error, which will be discussed below.[1]

## Standard of Review

A motion to dismiss for failure to state a cause of action is solely a test of the adequacy of a plaintiff's petition. *Bosch v. St. Louis Healthcare Network*, 41 S.W.3d 462, 464 (Mo.banc 2001). Where the trial court has granted a motion to dismiss after determining that there is no private right of action or that the petition fails to state a claim, we review the trial court's ruling by giving the pleading its broadest intendment and treating all facts alleged as true. *Cedar County Mem'l Hosp. v. Nevada City Hosp.*, 987 S.W.2d 422, 424 (Mo.App. 1999). In addition to assuming all of the averments in the petition are true, all reasonable inferences therefrom are liberally granted to the plaintiff. *Reynolds v. Diamond Foods & Poultry, Inc.*, 79 S.W.3d 907, 909 (Mo.banc 2002).

No attempt is made to weigh any facts alleged as to whether they are credible or persuasive. *Id.* Rather, the petition is reviewed in almost an academic manner to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in the case. *Id.* The petition is construed favorably to the plaintiff in order to determine whether the averments contained therein "invoke substantive principles of law which entitle the plaintiff to relief." *Cedar County Mem'l Hosp.*, 987 S.W.2d at 424 (internal citation omitted).

Within the motion to dismiss, Prime asserted that Appellants' petition failed to state a claim upon which relief could be granted because there was no private right of action for noncompliance with a provision of the Missouri Workers' Compensation Law and because Appellants were not considered employees under that law. Further, Prime argued that dismissal was appropriate because the Division of Workers' Compensation has exclusive jurisdiction over the matter.

A trial court should grant a motion to dismiss when it appears, by the preponderance of the evidence, that it

---

**1.** The defendants in this case were Prime and the Lowes. In this opinion, the defendants are sometimes referred to only as Prime, which should not be construed as any determination regarding Appellants' alter ego claim.

lacks subject matter jurisdiction. *Felts v. Ford Motor Co.*, 916 S.W.2d 798, 801 (Mo. App.1995). The trial court's order granting Prime's motion to dismiss did not explicitly address the issue of subject matter jurisdiction or exclusive jurisdiction of the workers' compensation law in this situation. However, under our standard of review, we will affirm the trial court's ruling if the motion could have been sustained on any of the meritorious grounds raised in the motion. *Cedar County Mem'l Hosp.*, 987 S.W.2d at 424. Thus, this Court will address the question of jurisdiction in its review. *See Bosch*, 41 S.W.3d at 464.

Prime argues that our review is for abuse of discretion. Prime is correct that a motion to dismiss for lack of subject matter jurisdiction is an appropriate means of raising the workers' compensation law as a defense to a common law tort action. *James v. Poppa*, 85 S.W.3d 8, 9 (Mo.banc 2002). Under Rule 55.27, the trial court shall dismiss the action whenever it appears, either by suggestion of a party to the action or otherwise, that the court lacks jurisdiction. *Id.;* Rule 55.27(g)(3). As indicated above, the trial court should grant the motion to dismiss if it appears by a preponderance of the evidence that it is without jurisdiction. *Quinn v. Clayton Constr. Co., Inc.*, 111 S.W.3d 428, 431 (Mo.App.2003).

■■■ Whether there is subject matter jurisdiction is a question of fact left to the sound discretion of the trial court. *James*, 85 S.W.3d at 9. As such, *when the trial court answers that question of fact*, we will review for an abuse of discretion. *Quinn*, 111 S.W.3d at 431–32 (emphasis added). Here, the trial court did not address the issue of subject matter jurisdiction, dismissing Appellants' petition on other grounds; thus, our standard of review is as is outlined in the paragraphs previous to the one above.

## Facts

Appellants are comprised of "all persons who entered into lease agreements with Prime and lease-purchase agreements with Success Leasing, Inc. [("Success")], and who have been charged and paid premiums for workers' compensation insurance." The Owner Operator Independent Drivers Association, Inc., also one of the plaintiffs and Appellants, "is a business association of persons and entities, commonly known as 'owner-operators,' who own or lease and operate, motor carrier equipment." The Association "is a party to this lawsuit in a representative capacity in order to redress the injury to its members." Jeffrey Warta is the named plaintiff for the class.

Prime is incorporated under the laws of the State of Nebraska, authorized to do business in Missouri, with Springfield, Missouri serving as its principal place of business. Prime "is a motor carrier, primarily engaged in the enterprise of providing transportation services to the shipping public." Success is a corporation, also based in Springfield, Missouri, "that leases tractor units, with the option to purchase, to independent owner-operators."

Appellants assert in their brief that Success is wholly owned by Robert and Lawana Lowe; however, Appellants provide no reference to the legal file where such an allegation is made. There is information in the legal file that indicates that Prime and Success share employees, such as the Controller of Prime acting also in the capacity of Director of Leasing at Success. It is alleged in the petition that Robert and Vera Lowe are officers and directors of Prime, and that Lawana Lowe is a director of Prime.

From 1996 until April 7, 2000, Warta provided a motor vehicle, specifically a tractor unit, to Prime under a service con-

tract between Warta and Prime. Within the service contract, which Prime called a service contract until April, 1997, after which time the term "Independent Contractor Operating Agreement" was used, the tractor was leased from Warta "to Prime for the purpose of hauling freight." The tractor itself was leased to Warta from Success under a lease-purchase agreement. Under the provisions of the lease-purchase agreement, although Warta had the option to purchase the tractor, he obtained no ownership interest in the vehicle during the term of the lease.

The service contract with Prime indicated that Warta was required to obtain and purchase workers' compensation insurance. Under the operating agreement, Warta had a choice of either making an election under the workers' compensation law to procure insurance for occupational injuries or providing and maintaining "suitable alternative insurance coverage . . . approved by Prime." The agreement also contained a provision under which Warta could procure required insurance coverage "through Prime or a Prime affiliate." Amounts were deducted weekly from Warta's pay from Prime to pay for the premiums.

On April 7, 2000, Warta sustained an injury, and he later applied for workers' compensation benefits before the Missouri Labor and Industrial Relations Commission. In his claim for compensation, Warta listed himself as the employer. As averred in the petition, Prime "intervened" in that proceeding as Warta's employer, directed his medical treatment, "and obtained other benefits pursuant to Missouri workers' compensation law."

In their petition, Appellants alleged that Prime "engaged in a pattern of practice in which its alter-ego, [Success], enters into lease-purchase agreements with putative class members, whereby such putative class members obtain equipment where no title passes to the individuals." The tractors leased under those lease-purchase agreements are then "leased to Prime to transport goods in interstate commerce[,]" under the provisions of a service contract in which putative class members are identified as independent contractors. Appellants further alleged that "Prime engaged in a scheme by which it deducted workers' compensation premiums from putative class members, in violation of [§ 287.290, RSMo 2000], and at the same time considered itself the employer of the same putative class members when a workers' compensation claim was made."

Appellants' petition contained four counts. Count I was for unjust enrichment, in which Appellants alleged that Prime benefited from Warta's payment of workers' compensation premiums, and that Prime's acceptance of those premiums was inequitable.

In Count II, for fraudulent misrepresentation, Appellants alleged that Prime represented to Warta that he was required to purchase workers' compensation insurance; Prime had knowledge that the representations were false; Prime intended that Warta would rely on the representations; Warta did so rely on the representations; and, Warta's reliance caused him damage and injury.

Count III was negligent misrepresentation. Here, Appellants alleged that Prime provided Warta with information regarding workers' compensation insurance; Prime failed to exercise reasonable care in the provision of that information and misrepresented to Warta that he was required to purchase workers' compensation insurance; Warta justifiably relied on Prime's representations; and, Warta's reliance caused him damage and injury.

In Count IV, Appellants alleged that the individual defendants, the Lowes, were the alter ego of Prime and had exercised a level of control over Prime sufficient to pierce the corporate veil.

As summarized in their brief, Appellants sought relief that included damages for the unjust enrichment gained by Prime, or the return of the workers' compensation premiums paid by Warta and other members of the class.

The defendants, Prime and the Lowes, filed a motion to dismiss, or in the alternative, a motion to compel arbitration. They argued that dismissal was appropriate based on the following grounds: no private right of action for noncompliance with workers' compensation law; Division of Workers' Compensation has exclusive jurisdiction over the matter; Appellants cannot use common law claims to seek enforcement of duties and obligations under the workers' compensation law; and, owner-operators are not employees under the workers' compensation law.

In his order granting the defendants' motion to dismiss and granting judgment in their favor, the trial judge dismissed Appellants' petition on two grounds. First, the court found that Appellants had no private right of action under the workers' compensation law for their common law claims of unjust enrichment, misrepresentation, and alter ego. Second, the court dismissed for failure to state a claim, finding that Warta and the other class members were owner-operators, and thus exempt from the definition of employee under the workers' compensation law. The trial court also indicated that it rejected Appellants' collateral estoppel argument, under which they asserted that collateral estoppel prevented Prime from acting as the employer of the class members when it intervened in their workers' compensation claims yet claiming the class members were not employees with respect to payment for workers' compensation insurance.

Appellants filed a motion to reconsider, which the trial court overruled, indicating that the order granting the defendants' motion to dismiss stood. This appeal followed.

## Discussion

Appellants raise four points on appeal, each attacking the trial court's ruling on the motion to dismiss. We will address Points I and II together, as we find that the arguments presented and necessary analyses are intertwined.

*Point I—Common law actions not preempted by workers' compensation law*

*Point II—Error in dismissing petition based on no private right of action*

In their first point, Appellants argue that the trial court erred in holding that the common law claims of unjust enrichment, fraudulent misrepresentation, and negligent misrepresentation were preempted by the workers' compensation law. In Point II, they contend that the trial court erred in dismissing Appellants' petition based on the ground that they had no private right of action to enforce the workers' compensation law.

Prime points to § 287.128.6, RSMo 2000, which states,

Any person may file a complaint alleging fraud or noncompliance with this chapter with a legal advisor in the division of workers' compensation. The legal advisor shall refer the complaint to the fraud and noncompliance unit within the division. The unit shall investigate all complaints and present any finding of fraud or noncompliance to the director, who may refer the file to the attorney general. The attorney general may

prosecute any fraud or noncompliance associated with this chapter.

Prime argues that the statutory provision precludes this action and that any allegation of fraud related to noncompliance with the workers' compensation law would need to follow the procedure outlined in § 287.128.6, RSMo 2000. Further, Prime argues that Appellants have no private right of action to enforce a violation of § 287.290, RSMo 2000, which states, "No part of the cost of [workers' compensation] insurance shall be assessed against, collected from or paid by any employee."

Prime is correct that the workers' compensation law "is wholly substitutional in character and ... any rights which a plaintiff might have had at common law have been supplanted and superseded by the act, if applicable." *Felts*, 916 S.W.2d at 801 (internal citation omitted). It is stated in § 287.120.2, RSMo 2000, that "[t]he rights and remedies herein granted to an employee shall exclude all other rights and remedies of the employee ... at common law or otherwise, on account of such accidental injury or death, except such rights and remedies as are not provided for by this chapter."

■ With regard to the exclusivity of the workers' compensation law, a trial court is without jurisdiction to hear a case if the act provides remedies for wrongs alleged "because [the] workers' compensation law replaces traditional civil tort liability as to the employer." *Felts*, 916 S.W.2d at 801. Thus, it is important that the trial court consider whether the workers' compensation law provided relief for the acts the employer allegedly committed. *Id.*

■ Whether or not a case comes within the provisions of the workers' compensation law is a question of fact. *Porter v. Erickson Transport Corp.*, 851 S.W.2d 725, 733–34 (Mo.App.1993). Since the

workers' compensation law is in derogation of the common law, the act must be strictly construed where existing common law rights and remedies are affected. *Id.* at 736. Common law rights and remedies should not be eliminated from those available to an employee unless they are abolished by clear and unambiguous terms. *Id.* at 734. Further, if it is a close question as to whether the case comes within the workers' compensation law, the decision should be weighted in favor of retention of the common law right of action. *Id.* at 736.

■ All parties here agree with the well-established principle that the fundamental purpose of the workers' compensation law is to lay the responsibility on industry for losses sustained by employees resulting from injuries arising out of or in the course of employment. *Id.* at 735. When an injured employee claims workers' compensation benefits, any doubt about his or her right to them should be resolved in the favor of the employee or claimant. *Id.* However, as indicated above, when a plaintiff brings a common law claim, and the defendant raises the workers' compensation law as a defense or asserts that the workers' compensation law has exclusive jurisdiction or provides the sole remedies for the alleged wrongs, the workers' compensation law must be strictly construed where common law rights and remedies are affected. *Id.* at 734.

■ Here, our reading of Appellants' petition is that they are not asking for remedies provided within the workers' compensation law, as they are not requesting workers' compensation benefits for injuries sustained by Warta and other class members arising out of or in the course of employment. Missouri law does require that the workers' compensation law be construed so as to extend the benefits of the act to the largest possible class of

people; however, Missouri law also favors statutory construction that avoids unjust or unreasonable results. *Harp v. Malone Freight Lines, Inc.*, 16 S.W.3d 667, 670 (Mo.App.2000), *overruled on other grounds by Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003) (overruling *Harp*, and numerous other cases, to the extent that it holds that § 287.495.1, RSMo 2000, requires a reviewing court to view the evidence and all reasonable inferences therefrom in the light most favorable to the workers' compensation award).

Balancing the considerations discussed above, as the workers' compensation law does not provide a remedy for the wrongs alleged, and such remedies are provided under common law, the case should not have been dismissed on that ground. Regarding whether § 287.128.6, RSMo precludes a private right of action, we note that the only "shall" used in that provision refers to action that the legal advisor for the division of workers' compensation must take if someone files a compliant alleging fraud or noncompliance. Section 287.128.6, RSMo 2000, outlines a procedure that a complainant *may* follow. To interpret the statutory provision in a manner that would preclude a private right of action to pursue common law claims for which the workers' compensation law provides no remedies would, in our view, lead to an unjust or unreasonable result. *See Harp*, 16 S.W.3d at 670.

Appellants' Points I and II have merit. We continue to review their remaining points to determine whether the trial court had sufficient grounds to grant the motion to dismiss. *See Cedar County Mem'l Hosp.*, 987 S.W.2d at 424.

*Point III—Collateral estoppel issue*

■ In their third point, Appellants contend that the trial court erred in holding that Prime should not be collaterally estopped from denying that it was Warta's employer, because the facts showed that Prime had admitted that it was the employer in Warta's workers' compensation proceeding and in the proceedings of other members of the plaintiffs' class. Within the trial court's order granting the motion to dismiss, the trial judge indicated that he rejected Appellants' argument in this regard.

■ In general, a party will not be permitted to take a position on a matter that is directly contrary to, or inconsistent with, one previously assumed. *Porter*, 851 S.W.2d at 736. Within the affidavits and exhibits before the trial court, which may be considered at least for the determination of jurisdiction, *see Quinn*, 111 S.W.3d at 431, Warta's original claim for workers' compensation benefits showed that he listed himself as the employer. In Appellants' petition, they alleged Prime had intervened in Warta's workers' compensation proceeding. In another exhibit entitled "Answer to Claim for Compensation," Prime was listed as employer and Warta as employee. In an affidavit from James B. Owen, Prime's vice president of risk management, Owen stated that Prime never entered an appearance in Warta's workers' compensation claim and that the person whose name appears as the employer's or insurer's attorney, has never been employed by Prime.

As indicated in *Porter*, we agree with the general concept that a party may not take contrary positions with regard to the same matter in order to escape liability. Thus, to the extent Prime would attempt to do so in this case, it should be collaterally estopped, and it would be error for a trial court to allow Prime to take contrary positions. However, we do not agree with Appellants here that the facts "clearly show" that Prime had waived its right to argue that it was not Warta's employer.

Point III is denied.

*Point IV—Warta not an owner/operator*

 In their final point, Appellants argue that the trial court erred in holding that Warta was not an employee of Prime because he was an owner-operator and thus exempt from the statutory definition of employee under § 287.020.1, RSMo 2000.

Section 287.020.1, RSMo 2000, provides, in part:

The word "employee" shall not include an individual who is the owner and operator of a motor vehicle which is leased or contracted with a driver to a for-hire common or contract motor vehicle carrier operating within a commercial zone as defined in section 390.020 or 390.041, RSMo, or operating under a certificate issued by the motor carrier and railroad safety division of the department of economic development or by the interstate commerce commission.

The only portion of the exemption causing disagreement among the parties is whether Warta was an owner and operator.

In their reply brief, Appellants draw our attention to a California appellate case recently decided, *Albillo v. Intermodal Container Services, Inc.*, 114 Cal.App.4th 190, 8 Cal.Rptr.3d 350 (2 Dist. Dec.11, 2003). Similar to the case at bar, the defendant company in the California case transported freight by leasing trucks from truck owners and contracting to have those leased trucks operated by the owner or drivers employed by the owner. *Id.* at 194, 8 Cal.Rptr.3d 350. One major difference in this case is that, although there was a service contract between the truck owner similar to the service contract or independent contractor operating agreement here, the case does not discuss any leasing arrangements for the truck or tractor unit itself. Rather, the facts indicate that all members of the class were, in fact, owners of the trucks. *Id.*

The class members in *Albillo* were required to obtain their own workers' compensation coverage, but could elect to purchase such coverage through the company. *Id.* at 195–96, 8 Cal.Rptr.3d 350. The contract between the owner/operators and the company indicated that the parties, by entering in to the contract were availing themselves of section 4150 of the California Labor Code, which is similar to § 287.035, RSMo 2000, under which partners, co-partners, and sole proprietors may elect to procure workers' compensation insurance for themselves. *Id.* at 197–98, 8 Cal.Rptr.3d 350. The contract further stated that by availing themselves of section 4150, the parties did "not intend to alter their independent contractor relationship or create an employer-employee relationship." *Id.*

Section 3751 of the California Labor Code is similar to § 287.290, RSMo 2000, which states that no part of the cost of insurance coverage may be paid by the employee. *Id.* The California appellate court held that, although election under section 4150 did not make a person an employee for all purposes, "it does expressly subject him or her to the compensation provisions of division four of the Act," and section 3751 is among those provisions. *Id.* at 198–99, 8 Cal.Rptr.3d 350. Therefore, according to the court, deducting amounts from the truck owners' pay to procure workers' compensation coverage violated section 3751. *Id.* Further, because the election under section 4150 subjected the parties to section 3751, the court determined that the plain language of the statute precluded the company from requiring members of the plaintiff class to pay for their own workers' compensation insurance. *Id.* at 198–200, 8 Cal.Rptr.3d 350.

Missouri's workers' compensation law does not contain the same language as the California Labor Code, nor have any Mis-

souri courts construed the language of the Missouri's act to indicate that an election under § 287.035, RSMo 2000 automatically subjects a person to § 287.290, RSMo 2000. We need not determine here whether such a statutory construction is appropriate in Missouri, as the question of the plain language of the statute with regard to the exemption for owner-operators under § 287.020.1, RSMo 2000 has been discussed in Missouri.

In *Harp*, an appeal was taken from a decision of the Labor and Industrial Relations Commission in which the Commission held that "the exemption does not apply to the driver of a contracted vehicle who has no ownership interest in that vehicle." 16 S.W.3d at 670. In *Harp*, Dan Harp owned a truck and entered into an independent operating agreement with Malone Freight Lines, and that agreement designated Dan as an independent contractor. *Id.* at 669. Dan's brother, Carl, contacted Malone for employment and began hauling freight for the company, driving Dan's truck. *Id.* Carl was injured while delivering a load for Malone and filed a workers' compensation claim, and the Commission adopted the administrative law judge's award against Malone. *Id.*

On appeal, the Court considered the plain and ordinary meaning of the words in § 287.020, RSMo 2000, to determine the intent of the legislature. *Id.* at 670. Implementing that method of statutory construction, we held that "[b]ecause the statute excludes only those who are a truck 'owner *and* operator' (emphasis added) the plain and ordinary meaning of the phrase does not exclude a driver who is an operator but not an owner of the leased or contracted truck." *Id.*

Considering the plain and ordinary meaning of the word "owner," we set forth the definition of the word contained in Black's Law Dictionary, as well as editorial commentary about the term:

The person in whom is vested the ownership, dominion, or title of property; proprietor. He who has dominion of a thing, real or personal, corporeal or incorporeal, which he has a right to enjoy and do with as he pleases, even to spoil or destroy it, as far as the law permits, unless he be prevented by some agreement or covenant which restrains his right.

The term is, however, a nomen generalissimum, and its meaning is to be gathered from the connection in which it is used, and from the subject-matter to which it is applied . . . .

The term "owner" is used to indicate a person in whom one or more interests are vested for his own benefit. The person in whom the interests are vested has "title" to the interests whether he holds them for his own benefit or for the benefit of another. Thus the term "title," unlike "ownership," is a colorless word; to say without more that a person has title to certain property does not indicate whether he holds such property for his own benefit or as trustee. Restatement, Second, Trusts § 2 (Comment (d)); Restatement of Property, § 10.

BLACK'S LAW DICTIONARY 1105 (6th ed.1990).

Prime argues that the Missouri legislature has provided a definition of "owner," albeit in different chapters, all under Title XIX (Motor Vehicles, Watercraft and Aviation), and that the definitions found in §§ 301.010, 302.020, and 303.020, RSMo 2000, are effectively the same as that within the federal regulatory scheme governing the relationship between motor carriers and owner-operators, and therefore, should be considered as the definition under the workers' compensation law. Under that definition, an "owner" is:

[a person] who holds the legal title to a [vehicle;] or in the event [a vehicle] is

the subject of an agreement for the conditional sale or lease thereof with the right of purchase upon performance of the conditions stated in the agreement and with an immediate right of possession vested in the conditional vendee or lessee, or in the event a mortgagor of a [vehicle] is entitled to possession [thereof], then such conditional vendee or lessee or mortgagor [shall be deemed the owner for the purpose of this law];

§§ 301.010(42), 302.010(16), 303.020(9), RSMo 2000.

Prime cites no authority directly supporting its theory that the workers' compensation law intended to use the above definition of "owner." We do, however, have the following principles of the workers' compensation law that were stated previously in this opinion: that the fundamental purpose of the workers' compensation law is to lay the responsibility on industry for losses sustained by employees resulting from injuries arising out of or in the course of employment and that the workers' compensation law is to be construed so as to extend the benefits of the act to the largest possible class of people. *Porter*, 851 S.W.2d at 735; *Harp*, 16 S.W.3d at 670. These principles provide support for the argument that perhaps the non-adoption of the definition of "owner" from other chapters was intentional.

We do agree with Prime that there are somewhat different facts in *Harp*; however, given that the lease-purchase agreement between Success and Warta specifically indicated that Warta would not obtain any ownership interest in the vehicle during the period of the lease, we apply the statutory construction from *Harp* to the facts here. *Harp* did also discuss the "right to control" factor and used that analysis to determine that Carl was the employee of Malone rather than his brother Dan. *Id.* at 671–72. Within our consid-

eration of the trial court's motion to dismiss, we do not have the facts before us to conduct a "right to control" analysis; however, such an analysis may be appropriate should this matter proceed to trial.

Point IV has merit. The trial court erred in holding that Warta and other similarly-situated members of the plaintiff class were exempted from the definition of "employee" because they were owners and operators.

### Conclusion

The order granting the motion to dismiss and the judgment for dismissal is reversed and the cause remanded to the trial court with directions for it to proceed in a manner not inconsistent with this opinion.

BARNEY, P.J., and RAHMEYER, C.J., concur.