[No. B156444. Second Dist., Div. Two. Dec. 11, 2003.]

IRWIN ALBILLO et al., Plaintiffs and Appellants, v.
INTERMODAL CONTAINER SERVICES, INC., et al., Defendants and
Appellants.

LUIS MONTOYA Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and INTERMODAL
CONTAINER SERVICES, INC., et al., Respondents.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Under California Rules of Court, rules 976(b) and 976.1, only the Factual and Procedural Background, part A3 of the Discussion, and the Disposition are certified for publication.

**C**OUNSEL

Law Offices of Kumetz & Glick, Stephen Glick, Fred Kumetz, Barbara Kumetz, Jeffrey A. Levinson and Joseph C. Watson for Plaintiffs and Appellants and for Petitioner.

Littler Mendelson, Robert F. Millman, Tony R. Skogen, Keith A. Jacoby and Fermin L. Llaguno for Defendants and Appellants and for Respondents.

No appearance for Respondent Workers' Compensation Appeals Board.

**OPINION**

**DOI TODD, J.—**[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## FACTUAL AND PROCEDURAL BACKGROUND

Respondents are related transportation entities. The two primary companies are Intermodal Container Service, Inc. and Interstate Consolidation Service, Inc.[2] A division of Intermodal does business as Harbor Rail Transport; a division of Interstate does business as Cartage Service. Together, these entities are involved in local and interstate intermodal freight transportation, which involves the use of two or more modes of transportation for the continuous movement of freight from origin shipper to destination receiver. Intermodal motor carriers, or trucks, are a critical link in the intermodal chain, as they are the only effective means of moving trailers or containers from marine and rail terminals.

Respondents do not own any trucks. Rather, they transport freight by leasing trucks from truck owners and contracting to have those leased trucks operated by the owner or the owner's drivers. Appellants are a class of all truck owner-operators and drivers who drove trucks owned by those owner-operators, who contracted with respondents to provide transportation services at any time from July 1, 1992 to the present. Named plaintiffs Irwin Albillo and Luis Montoya are representative of the appellant class.

The primary agreement between appellants and respondents is entitled a Lease and Subhaul Agreement with Independent Contractor (Lease Agreement). It provides that the "Contractor," or appellant class member, owns a truck suitable for the transportation of freight, that the respondent "Carrier" is legally authorized to engage in interstate freight transportation, and that both parties desire to enter into an agreement to transport freight. The Lease Agreement describes the relationship of the parties as "between co-equal motor carriers, both of whom are engaged in 'for hire' motor carriage." Pursuant to the Lease Agreement, appellants agree to transport freight on respondents' behalf in exchange for respondents' agreement to compensate them according to a specified or negotiated rate. In addition, the Lease Agreement specifies that, in order to do business with respondents, appellants are required to purchase and maintain certain types of insurance at their own expense.

---

[*]See footnote, *ante*, page 190.

[2] The companies' founders sold their interest in Intermodal and Interstate to Pacer International in 1997, after this lawsuit was initiated.

In 1992, respondents instituted their own insurance program, which enabled appellants to secure the required coverage by electing to have respondents select, acquire and administer the insurance as part of their fleet or group policy. As a result of this program, respondents modified the Lease Agreement to indicate that appellants have the option of obtaining such insurance under respondents' fleet or group policies. Respondents also supplemented the Lease Agreement with a separate Agreement and Elections by Contractor re Insurance Coverage and Telephone/Radio Use (Election Agreement), which required appellants to elect either to provide a certificate evidencing the required coverage, or to authorize respondents to obtain the required coverage and to deduct the cost by a settlement offset from appellants' compensation.

For those who elect to have respondents obtain the requisite insurance coverage, a Schedule of Insurance Deductions (Insurance Schedule) sets forth the "type, cost, and deductions regarding the parties' agreements as to the acquisition of, and payment for, insurance coverage in connection with the parties' Lease and Subhaul Agreement." According to the Insurance Schedule, respondents charge appellants (1) a weekly administrative fee of 1.055 percent of their revenue, (2) $100 per week per truck for liability insurance, and (3) $18.83 per $100 on 25 percent of an appellant's weekly gross settlement revenue for workers' compensation insurance. The Insurance Schedule authorizes respondents to deduct these amounts from appellants' settlement statements. It also informs appellants that "[t]he amounts charged by [respondents] to provide the requested insurance coverages or services to [appellants] may exceed the estimated or final pro rata cost to [respondents] of providing, or making available, such coverages/services to [appellants]."

As a practical matter, since 1991 all owner-operators with whom respondents have contracted have elected to obtain their insurance coverage, including workers' compensation coverage, through respondents. Between July 2, 1992 and June 30, 1999, the premium payments received from appellants in accordance with the Insurance Schedule exceeded the premiums respondents paid to secure the insurance by $3,221,399.54. According to respondents, they were able to realize such savings by securing reasonably priced coverage due to their safety program and fleet size. That money was not accounted for as profit, but was used to fund the administration of the insurance program, the safety program and other related expenses.

Beginning in 1997, respondents were also able to achieve some insurance premium savings by eliminating the prior $1,000 deductible on their $1 million liability policy and, instead, providing a self-funded retention of $250,000 per accident. With this change, respondents intended to continue to make appellants individually responsible for no more than the prior $1,000

deductible. By reason of the retention, respondents would be responsible for any amount between $1,000 and $250,000.

Neither the Election Agreement nor the Insurance Schedule informed appellants of any deductible amount—$1,000 or $250,000. Further, respondents did not provide appellants with certificates of insurance indicating the premium cost and deductible amount. At all times, however, respondents verbally represented to appellants that a $1,000 deductible applied.

Appellants Irwin Albillo and Luis Montoya filed the operative first amended complaint on April 8, 1999, on behalf of themselves and similarly situated individuals. Previously, the named appellants had filed individual actions against respondents, one in superior court and one before the Workers' Compensation Appeals Board (WCAB). By stipulation dated April 3, 1999, the parties agreed to consolidate the actions, which resulted in the filing of the first amended complaint and the dismissal of the prior actions. Pursuant to that same stipulation, the parties agreed to certify the matter as a class action and to try the matter before three retired judges to be appointed pro tempore jointly by the superior court and the WCAB.

The first amended complaint set forth eight causes of action, including single causes of action for breach of fiduciary duty, fraud, conversion, money had and received, and four causes of action for violation of Business and Professions Code section 17200. Appellants sought damages, declaratory and injunctive relief, and attorney fees. Respondents answered on April 22, 1999.

Appellants' claims were premised on four basic contentions. First, appellants alleged that respondents erroneously classified them as independent contractors instead of employees, resulting in the improper deduction of workers' compensation insurance premiums and the denial of other employee benefits. Second, appellants claimed that respondents' offering insurance to them constituted the illegal transaction of insurance without a license. Third, appellants alleged that respondents failed to comply with the disclosure requirements contained in the federal leasing regulations. Finally, appellants averred that respondents' failure to make adequate disclosures in their insurance program amounted to common law fraud.

Trial before a three-judge panel commenced on August 9, 1999, and the matter was submitted on September 9, 1999. The trial court issued a proposed statement of decision in January 2000. Thereafter, the parties submitted their objections to the proposed statement of decision, as well as further briefing and evidence.

The trial court filed its statement of decision in September 2000. After summarizing the evidence, the trial court ruled in favor of respondents on

several claims, finding respondents were not transacting insurance in violation of the Insurance Code; that appellants assumed the status of independent contractors and not employees; that the parties' election under Labor Code section 4150 to be governed by the workers' compensation provisions did not make appellants employees for any other purpose; that respondents did not violate the Business and Professions Code by profiting from their provision of insurance to appellants; and that appellants failed to satisfy the elements of fraud or deceit. The trial court further found, however, that respondents engaged in an unlawful activity in violation of Business and Professions Code section 17200 by failing to comply with the federal leasing regulations' disclosure requirements concerning insurance coverage information. Specifically, respondents failed to inform appellants in the Lease Agreement that they would provide a copy of each insurance policy (nor did they provide the actual policies); respondents further failed to provide appellants with certificates of insurance—documents which must contain detailed insurance information that was never made available to appellants in any form. The trial court granted injunctive relief and restitution to appellants, but declined to award appellants attorney fees. In January 2002, the trial court entered a final judgment in conformity with the statement of decision. Appellants timely filed a notice of appeal, and thereafter, respondents timely filed a notice of cross-appeal.

## DISCUSSION[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

    A.   1–2[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

    3.   *Respondents unlawfully charge appellants to secure workers' compensation insurance.*

Appellants next contend that respondents improperly required appellants to pay for their own workers' compensation coverage. The Lease Agreement requires appellants to maintain workers' compensation insurance coverage for themselves and their employees who render services under the Lease Agreement. As part of the Election Agreement, appellants have the option of obtaining workers' compensation insurance from respondents to cover themselves and their employees. Relevant here, the Election Agreement provides: "By entering into this agreement the parties wish only to avail themselves of

---

[*] See footnote, *ante,* page 190.

the provisions of Section 4150 of the California Labor Code which permit insurance coverage of independent contractors," and do not intend to alter their independent contractor relationship or create an employer-employee relationship.[6] If appellants elect to obtain workers' compensation insurance through respondents, they must agree to "pay [respondents] the entire monthly cost of such insurance coverage by [respondents] by making appropriate deductions from the settlements of the [appellants]." The parties stipulated that respondents collected $2,131,199 from appellants for the purpose of securing workers' compensation insurance.

In their third cause of action, appellants alleged that respondents violated Business and Professions Code section 17200, in part because "[t]he actions of Defendants in exacting, deducting and receiving funds from Class Members to cover the cost of workers' compensation insurance [are] in express violation of state law, including California Labor Code section 3751."[7] In its statement of decision, the trial court rejected this claim, ruling that Labor Code section 4150 permits persons who are not otherwise qualified as employees to elect to come within the provisions of the Workers' Compensation Act (Act) for the purpose of collecting benefits, but that the election "does not make [appellants] employee for all purposes, . . . and there is no need to do so to effectuate the clear purpose of the law."

We disagree. While it is correct that an election under Labor Code section 4150 does not make a person an employee for all purposes, it does expressly subject him or her to the compensation provisions of division 4 of the Act. Labor Code section 3751 is one of those provisions. (E.g., *Pearl v. Workers' Comp. Appeals Bd.* (2001) 26 Cal.4th 189, 195 [109 Cal.Rptr.2d 308, 26 P.3d 1044] [division 4 commences with Lab. Code, § 3200].) Accordingly, we hold that by deducting amounts from appellants' compensation to secure workers' compensation coverage, respondents violated Labor Code section 3751. The matter must be remanded to the trial court for a determination as to whether this violation constituted an unlawful, unfair or fraudulent business practice within the meaning of Business and Professions Code section 17200, and, if applicable, for a determination of the appropriate remedy.

---

[6] Labor Code section 4150 provides: "When an employer has in his employment any person not included within the term 'employee' as defined by Article 2 of Chapter 2 of Part 1 of this division or a person not entitled to compensation under this division, such employer and such person employed by him may, by their joint election, come under the compensation provisions of this division in the manner hereinafter provided."

[7] Labor Code section 3751 provides in pertinent part: "(a) No employer shall exact or receive from any employee any contribution, or make or take any deduction from the earnings of any employee, either directly or indirectly, to cover the whole or any part of the cost of compensation under this division. Violation of this subdivision is a misdemeanor."

### a. *The workers' compensation scheme.*

In the early 1900's, the combination of industrialization and tort law developments which denied workers recovery for many industrial injuries resulted in a public call for reform. (*Mathews v. Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 719, 728–729 [100 Cal.Rptr. 301, 493 P.2d 1165].) The Legislature responded, first enacting a voluntary and later a compulsory workers' compensation system, which provided that employers' liability for employees' injuries were no longer governed by common law tort doctrines; instead, employees would be compensated for such injuries without regard to negligence. (*Id.* at pp. 730–732.)

Currently, the Act (Lab. Code, § 3200 et seq.) is a comprehensive statutory scheme that governs the compensation provided to California employees for injuries occurring during the course and scope of their employment. (*Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund* (2001) 24 Cal.4th 800, 810 [102 Cal.Rptr.2d 562, 14 P.3d 234] (*Vacanti*).) The *Vacanti* court explained the rationale supporting this statutory scheme: "The underlying premise behind this statutorily created system of workers' compensation is the ' "compensation bargain." ' [Citation.] Pursuant to this presumed bargain, 'the employer assumes liability for industrial personal injury or death without regard to fault in exchange for limitations on the amount of that liability. The employee is afforded relatively swift and certain payment of benefits to cure or relieve the effects of industrial injury without having to prove fault but, in exchange, gives up the wider range of damages potentially available in tort.' [Citation.]" (*Id.* at p. 811.)

The compensation bargain involves benefits and burdens to both the employer and employee: " 'A policy of reciprocal concessions underlies the general rule of exclusivity of remedy . . . . In exchange for relatively swift and certain compensation for injury, the employee relinquishes the opportunity to recover the greater award which might be had from a jury. The employee is relieved of the burden of litigating claims for damages, while the employer can anticipate and pass on to consumers the lower cost of employee injuries which results from a statutorily prescribed measure of damages.' [Citation.]" (*Appl v. Lee Swett Livestock Co.* (1987) 192 Cal.App.3d 466, 473 [237 Cal.Rptr. 433], italics omitted.)

With the purpose of the Act in mind, we now turn to the specific statutory provisions at issue to determine whether an employer who elects to have its independent contractors subject to the remedies afforded by the Act under Labor Code section 4150 must also be subject to the prohibitions contained in Labor Code section 3751. Neither appellants nor respondents have cited any case addressing this issue, and our independent research indicates that this is an issue of first impression.

　　b.　*The plain language of the Labor Code demonstrates that respondents are precluded from requiring appellants to pay for their own workers' compensation insurance.*

This issue is purely one of statutory construction and, thus, presents a question of law which this court reviews de novo. (E.g., *City of Long Beach v. California Citizens for Neighborhood Empowerment* (2003) 111 Cal.App.4th 302, 305 [3 Cal.Rptr.3d 473]; *Haas v. Meisner* (2002) 103 Cal.App.4th 580, 585–586 [126 Cal.Rptr.2d 843].)

Our role in construing a statute is to ascertain and give effect to the Legislature's intent. "To determine that intent, a court first looks to the statutory words themselves, giving to the language its usual and ordinary import. The court construes statutory words in context, keeping in mind the statutory purpose. Statutory sections relating to the same subject matter must be harmonized, both internally and with each other, to the extent possible." (*Holmes v. Jones* (2000) 83 Cal.App.4th 882, 888 [100 Cal.Rptr.2d 138]; accord, *Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299]; *California Mfrs. Assn. v. Public Utilities Com.* (1979) 24 Cal.3d 836, 844 [157 Cal.Rptr. 676, 598 P.2d 836]; *Young v. Gannon* (2002) 97 Cal.App.4th 209, 223 [118 Cal.Rptr.2d 187].) "Furthermore, we consider portions of a statute in the context of the entire statute and the statutory scheme of which it is a part, giving significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose." (*Curle v. Superior Court* (2001) 24 Cal.4th 1057, 1063 [103 Cal.Rptr.2d 751, 16 P.3d 166].) At all times, "[o]ur foremost task remains ascertainment of the legislative intent, including consideration of 'the entire scheme of law of which it is a part so that the whole may be harmonized and retain effectiveness.' [Citation.]" (*City of Long Beach v. California Citizens for Neighborhood Empowerment, supra*, 111 Cal.App.4th at p. 306.)

In addition to general rules of statutory construction, our review is also governed by statute. *State Farm Fire & Casualty Co. v. Workers' Comp. Appeals Bd.* (1997) 16 Cal.4th 1187, 1196 [69 Cal.Rptr.2d 602, 947 P.2d 795], described the unique rule of construction that applies to the workers' compensation statutes: " 'In interpreting the workers' compensation statutes we do not start with whole cloth. We are directed by section 3202 to "liberally construe[]" the workers' compensation statutes "with the purpose of extending their benefits for the protection of persons injured in the course of their employment." ' " (See also *McGee Street Productions v. Workers' Comp. Appeals Bd.* (2003) 108 Cal.App.4th 717, 723 [133 Cal.Rptr.2d 813] ["Section 3202 provides that statutes contained in Divisions 4 and 5 of the Labor Code . . . 'shall be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment' "].)

We turn first to the language of Labor Code section 4150. That provision permits employers and persons not otherwise entitled to workers' compensation benefits to elect—as appellants and respondents did here—to "come under the compensation provisions of this division . . . ." (Lab. Code, § 4150.) By "this division," Labor Code section 4150 refers to division 4 of the Labor Code, commencing with Labor Code section 3200. (See *Pearl v. Workers' Comp. Appeals Bd.*, *supra*, 26 Cal.4th at p. 195; *Vacanti*, *supra*, 24 Cal.4th at p. 817.) Divisions 4 and 4.5 of the Labor Code contain the statutes regulating workers' compensation. (*Furtado v. Schriefer* (1991) 228 Cal.App.3d 1608, 1614 [280 Cal.Rptr. 16]; *Blew v. Horner* (1986) 187 Cal.App.3d 1380, 1383 [232 Cal.Rptr. 660].)

Labor Code section 3751 is likewise located in division 4. It prohibits an employer from receiving any employee contribution or taking any deduction from employee earnings to cover the cost of compensation. (Lab. Code, § 3751, subd. (a).) Stated simply, this provision requires the employer to bear the entire cost of securing compensation. (E.g., *Jones v. Kaiser Industries Corp.* (1987) 43 Cal.3d 552, 556–557 [237 Cal.Rptr. 568, 737 P.2d 771] [according to § 3751, "the entire cost of workers' compensation benefits is borne by the employer"]; *Rymer v. Hagler* (1989) 211 Cal.App.3d 1171, 1183 [260 Cal.Rptr. 76] ["The legislature clearly intended the burden of securing compensation for the employee to be on the employer"]; *Self-Insurers' Security Fund v. ESIS, Inc.* (1988) 204 Cal.App.3d 1148, 1163 [251 Cal.Rptr. 693] ["section 3751 makes it a misdemeanor for an 'employer' to require his employees to pay their own workers' compensation withholding"]; *In re Marriage of Corriveau* (1986) 183 Cal.App.3d 1012, 1016 [228 Cal.Rptr. 563] ["Labor Code section 3751 prohibits financing workers' compensation benefits from employee contributions"]; cf. *Summers v. Newman* (1999) 20 Cal.4th 1021, 1032–1033 [86 Cal.Rptr.2d 303, 978 P.2d 1225] [requiring employee to pay third party litigation costs—deemed a "cost of compensation"—from his or her share of settlement proceeds would be inconsistent with the intent of § 3751].)

Applying both well-established rules of statutory construction, which require us to harmonize related statutory provisions, and Labor Code section 3202, which compels us to liberally construe the workers' compensation statutes so as to extend benefits to workers, we conclude that an employer who makes an election under Labor Code section 4150 to be governed by the workers' compensation provisions thereby becomes subject to the provisions of Labor Code section 3751. This conclusion is dictated by the plain language of the Labor Code. Parties who elect to "come under the compensation provisions of this division" necessarily elect to come under Labor Code section 3751, which is a part of division 4. A contrary conclusion would be inconsistent with the statutory scheme, as well as with the statutory principle of liberal construction. (Lab. Code, § 3202.)

Respondents' arguments do not persuade us to reach a different conclusion. They contend that parties who make an election under Labor Code section 4150 are subject only to the "compensation provisions" of division 4, which does not include Labor Code section 3751. They rely on Labor Code section 3207, which defines "compensation" as "every benefit or payment conferred by Division 4 upon an injured employee . . . ." They assert that precluding appellants from contributing to the cost of compensation is not a "benefit." But we fail to see how this is anything other than a benefit. It is undisputed that appellants paid $2,131,199 to respondents to secure workers' compensation insurance. Without question, it would have been a "benefit" to appellants to have had respondents, instead, pay this sum.

Also relying on the definition of "compensation" provided in Labor Code section 3207, respondents reason that an election under Labor Code section 4150 subjects the parties only to the compensation provisions applicable to "injured" employees. This reasoning, too, is flawed. According to respondents' analysis, whether or not the parties' Labor Code election subjected them to certain provisions would depend wholly on the health status of the employee. Applied here, respondents therefore would be precluded from requiring an injured appellant to contribute to the cost of obtaining compensation, but would be free to exact contribution from a noninjured appellant. This result is untenable. As explained in *Holmes v. Jones, supra,* 83 Cal.App.4th at page 889: "Where construction of a statute is necessary, interpretation should produce a reasonable result. Where uncertainty exists, the court must consider the consequences that will flow from a particular interpretation. [Citations.] If a statute gives rise to two alternative interpretations, the court should follow the one leading to the more reasonable result. [Citation.]" It would be patently unreasonable to construe the term "compensation provisions" as used in Labor Code section 4150 to apply only when one is injured.

Finally, respondents rely on *State Compensation Ins. Fund v. Brown* (1995) 32 Cal.App.4th 188 [38 Cal.Rptr.2d 98], to assert that Labor Code section 3751 does not apply to independent contractors because they are responsible for securing their own workers' compensation insurance. Though *Brown* involved a situation where independent contractor truckers contracted with a company to transport intermodal freight, any similarity between that case and the instant one ends there. The *Brown* court held that a workers' compensation insurer could not recover premiums allegedly owed by a trucking company operator, because the truckers were, as a matter of law, independent contractors ineligible for workers' compensation benefits. (*Brown, supra,* at pp. 204–205.) Here, in sharp contrast, respondents and appellants—as independent contractors—have voluntarily elected to come under the workers' compensation provisions. The evidence is undisputed that appellants are eligible to receive workers' compensation benefits and, in fact, have received

such benefits. *Brown* is thus irrelevant. Rather, the issue is whether the parties' election to come under the workers' compensation scheme subjects respondents to the provisions of Labor Code section 3751. We believe that it does.

      c. *Legislative history confirms that the requirement that employers pay to secure workers' compensation benefits is a compensation provision.*

Where, as here, legislative intent is expressed by the plain language of a statute, resort to extrinsic aids is unnecessary. "But, we may consider legislative history where it buttresses our interpretation of the plain meaning of a statute. [Citation.]" (*Jenkins v. County of Los Angeles* (1999) 74 Cal.App.4th 524, 530 [88 Cal.Rptr.2d 149], citing *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1120 [81 Cal.Rptr.2d 471, 969 P.2d 564].) We thus turn to the legislative history of Labor Code sections 3751 and 4150 because it is consistent with the plain meaning of those provisions. It demonstrates that Labor Code section 3751 is one of the compensation provisions by which employers must abide if they elect to "come under the compensation provisions of" division 4 pursuant to Labor Code section 4150.

The first voluntary workers' compensation system became effective September 1, 1911. (Stats. 1911, ch. 399, § 1 et seq., p. 796.) Following an amendment to the California Constitution which authorized the Legislature to enact a compulsory compensation law (Cal. Const., art. 14, § 4), in 1913 the Legislature enacted the Workmen's Compensation, Insurance and Safety Act (Stats. 1913, ch. 176, § 1, p. 279). Though the Act was compulsory, some employers remained exempt. For this reason, the Act included a provision for otherwise exempt employers to elect to come under the Act: "(a) Any employer, having in his employment any employee not included within the term 'employee' as defined in section fourteen of this act or not entitled to compensation under this act, and any such employee, may, by their joint election, elect to come under the compensation provisions of this act in the manner hereinafter provided." (Stats. 1913, ch. 176, § 87, pp. 319–320.) The 1913 Act expressly defined "compensation provisions of the act" as referring to "sections twelve to thirty-five, inclusive, of this act." (Stats. 1913, ch. 176, § 2, subd. (7), p. 280.)

The Legislature amended the Act in 1917. It renumbered the election provision (formerly section 87) as section 70. (Stats. 1917, ch. 586, § 70, pp. 877–878.) It also renumbered the pertinent definition provision from section 2, subdivision (7), as section 3, subdivision (8), and amended it to provide: "The phrase 'compensation provisions of this act' means and includes

sections six to thirty-one, inclusive, of this act." (Stats. 1917, ch. 586, § 3, subd. (8), p. 833.) A separate provision similarly provided: "The term 'compensation' means compensation under this act and includes every benefit or payment conferred by sections six to thirty-one, inclusive, of this act." (Stats. 1917, ch. 586, § 3, subd. (3), p. 833.)

At the same time, the Legislature amended section 30 to state: "[I]t shall be unlawful for any employer to exact or receive from any employee any contribution, or make or take any deduction from the earnings of any employee, either directly or indirectly, to cover the whole or any part of the cost of compensation under this act, and it shall be a misdemeanor so to do." (Stats. 1917, ch. 586, § 30, pp. 858–860.) Given that the definition of "compensation provisions" included section 30, even respondents concede that, at that time, "section 30(a) of the 1917 act, which included language almost identical to current Labor Code section 3751(a) would have been a 'compensation provision' of the act."

In 1919, the Legislature amended the Act again. It omitted section 3, subdivision (8), which had provided the definition of "compensation provisions" under the Act. (See Stats. 1919, ch. 471, § 3 et seq., pp. 910–912.) However, the Legislature retained the definition of "compensation" as it had existed in the 1917 Act. (Stats. 1919, ch. 471, § 3, subd. (3), p. 910.) In other words, the Legislature defined the term "compensation" to mean every benefit or payment conferred by certain enumerated sections, including section 30. (*Ibid.*)

In 1937, the Legislature codified the Act as Labor Code section 3200 et seq. (Stats. 1937, ch. 90, § 3200, p. 185.) Former section 30 became Labor Code section 3751 (Stats. 1937, ch. 90, § 3751, p. 272), while former section 70 became Labor Code section 4150 (Stats. 1937, ch. 90, § 4150, p. 276). References to "compensation provisions of this act" became "compensation provisions of this division," meaning division 4 of the Labor Code. (Stats. 1937, ch. 90, § 3200 et seq., p. 185.) Thus, section 3, subdivision (3), which became Labor Code section 3207, was amended to read: " 'Compensation' means compensation under Division IV and includes every benefit or payment conferred by Division IV." (Stats. 1937, ch. 90, § 3207, p. 266.) The Legislature did not intend any substantive modifications of Labor Code sections 3207, 3751 or 4150, noting that "[t]he provisions of this code, in so far as they are substantially the same as existing provisions relating to the same subject matter, shall be construed as restatements and continuations thereof and not as new enactments." (Stats. 1937, ch. 90, § 2, p. 185.)

■ We believe that this chronology demonstrates the Legislature has, at all times, intended that an employer who elects to come under the compensation

provisions of division 4 of the Labor Code be subject to the prohibitions found in Labor Code section 3751. The Legislature has consistently classified Labor Code section 3751 as a compensation provision, whether by using the express term "compensation provisions" or, later, the term "compensation." We, unlike respondents, do not find significant the fact that the Legislature omitted the definition of "compensation provisions" in 1919. The definition was redundant; it referred to precisely the same provisions as the Legislature's definition of "compensation." Absent the statutory definition of "compensation provisions," the Legislature's reference to that phrase in Labor Code section 4150 (former section 70) remained clear: An employer who elected to come under the compensation provisions of the Act (now division 4) was subject to the provisions providing any benefit or payment conferred by former section 6 through 31. As we must construe the term "compensation" to mean the same thing when used in different provisions of the Act, we conclude that the Legislature's reference to "compensation provisions" necessarily includes former section 30, currently Labor Code section 3751. (E.g., *People v. McKay* (2002) 27 Cal.4th 601, 621 [117 Cal.Rptr.2d 236, 41 P.3d 59] [" 'it is a well-established rule of construction that when a word or phrase has been given a particular scope or meaning in one part or portion of a law it shall be given the same scope and meaning in other parts or portions of the law' "].)

        d.  *Public policy requires that those who elect to be governed by the workers' compensation law be subject both to the law's benefits and burdens.*

██ The trial court concluded that public policy supported having appellants pay for their own workers' compensation insurance, reasoning that "[g]iving independent contractors the opportunity to protect themselves and the general public in this manner is consistent with the social policy of this State." To the contrary, we believe that no valid public policy is served by permitting respondents to pass on the cost of securing compensation to appellants. As we explained earlier, the entire workers' compensation system is premised on the "compensation bargain," whereby the employer assumes liability for industrial accidents without regard to fault in exchange for limitations on that liability, while the employee receives more swift and certain compensation in exchange for giving up tort remedies. (*Vacanti, supra,* 24 Cal.4th at p. 810.) Shifting the cost of obtaining compensation to appellants upsets the balance achieved by the compensation bargain.

██ Echoing the trial court's reasoning, respondents assert that public policy is served by cost-shifting, as more employers will be encouraged to offer workers' compensation coverage to independent contractors if the coverage is available at no cost to the employer. We agree that most employers

would jump at the opportunity to be insulated from tort liability at no cost to them. We do not agree, however, that any public policy is served by offering such an opportunity. Rather, requiring the independent contractor who makes an election under Labor Code section 4150 to bear the entire burden of obtaining compensation thwarts the reciprocal nature of the system. (See *Snyder v. Michael's Stores, Inc.* (1997) 16 Cal.4th 991, 1004 [68 Cal.Rptr.2d 476, 945 P.2d 781] ["workers' compensation law '. . . imposes reciprocal concessions upon *employer* and *employee* alike, withdrawing from each certain rights and defenses available at common law . . . .' [Citation.]"]; *Bell v. Industrial Vangas, Inc.* (1981) 30 Cal.3d 268, 288 [179 Cal. Rptr. 30, 637 P.2d 266] [the policy of reciprocal concessions "has been recognized historically as underlying the entire workers' compensation scheme"]; *Santiago v. Employee Benefits Services* (1985) 168 Cal.App.3d 898, 906 [214 Cal.Rptr. 679] ["The present system of workers' compensation has imposed reciprocal concessions upon employer and employee. The employer accepts liability without fault and is denied such common law defenses as contributory negligence and the fellow servant rule. The employer is assured of limited liability under a complete statutory scheme which provides for medical expenses and which allots a scheduled sum in lieu of both lost earnings and general damages. [Citations.] In exchange for this comprehensive system of assured compensation, the employee foregoes most separate tort actions he or she may have against his or her employer"].)

In sum, we conclude that respondents violated Labor Code section 3751 by requiring appellants to bear the cost of obtaining workers' compensation insurance. Appellants alleged this statutory violation as one of the bases supporting their claim that respondents violated Business and Professions Code section 17200. Neither party, however, has addressed what impact our reversal of the trial court's ruling regarding Labor Code section 3751 might have on appellants' claim under Business and Professions Code section 17200. Our conclusion that appellants violated the Labor Code does not necessarily answer the further question of whether this violation constitutes an unfair, unlawful or fraudulent business practice or act under the Business and Professions Code. As explained in *Vacanti*, the unfair competition law (Bus. & Prof. Code, § 17200 et seq.) "focuses solely on conduct and prohibits ' "anything that can properly be called a business practice and that at the same time is forbidden by law." ' [Citation.] 'As a result, to state a claim under the [unfair competition law] one need not plead and prove the elements of a tort.' " (*Vacanti, supra,* 24 Cal.4th at p. 827.) Instead, the plaintiff must establish that the practice is either unlawful (i.e., is forbidden by law), unfair (i.e., harm to victim outweighs any benefit) or fraudulent (i.e., is likely to deceive members of the public). (*Olsen v. Breeze* (1996) 48 Cal.App.4th 608, 617–618 [55 Cal.Rptr.2d 818]; *Saunders v. Superior Court* (1994) 27 Cal.App.4th 832, 839 [33 Cal.Rptr.2d 438].)

Accordingly, we must remand this matter to the trial court for a redetermination of appellants' third cause of action in a manner consistent with the findings of this court. The trial court is directed to determine whether respondents are liable on the third cause of action and, if so, determine the appropriate remedy or remedies for the Business and Professions Code section 17200 violation.[8]

4.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## CONCLUSION

We reverse the judgment on the third cause of action for violation of Business and Professions Code section 17200 and remand that cause of action to the trial court for a determination of that claim consistent with our conclusion that respondents violated Labor Code section 3751. In all other respects, we affirm the judgment. Each party is to bear its own costs.

Nott, Acting P. J., and Ashmann-Gerst, J., concurred.

The petitions of all appellants and petitioner for review by the Supreme Court were denied March 3, 2004. Brown, J., was of the opinion that the petitions should be granted.

---

[8] In light of our conclusion that respondents violated the Labor Code, respondents may not raise workers' compensation exclusivity as a bar to a claim under Business and Professions Code section 17200. (See *Muffett v. Royster* (1983) 147 Cal.App.3d 289, 301 [95 Cal.Rptr. 73] ["We hold that the act of the employer in seeking payment from an employee for the cost of the worker's compensation insurance in violation of the Labor Code, also precludes the employer from raising the worker's compensation act as a bar to a civil suit"], overruled on another point in *Cornette v. Dept. of Transp.* (2001) 26 Cal.4th 63 [109 Cal.Rptr.2d 1, 26 P.3d 332].)

*See footnote, *ante*, page 190.