Filed 2/1/22

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| COUNTY OF SAN BERNARDINO, | |
| Plaintiff and Respondent, | E078248 |
| v. | (Super.Ct.No. CIVSB2113136) |
| WEST VALLEY WATER DISTRICT, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  David S. Cohn, Judge.  Affirmed.

Reed & Davidson, Stuart L. Leviton and Nathan R. Hardy for Defendant and Appellant.

Tom Bunton, County Counsel, Jolena E. Grider, Deputy County Counsel for Plaintiff and Respondent.

Defendant and appellant West Valley Water District (District) appeals the entry of a stipulated judgment in favor of plaintiff and respondent County of San Bernardino

1

(County) ordering that the District conduct its elections on a statewide general election date starting in November 2022.

The sole issue on appeal is whether the District is authorized pursuant to Elections Code section 14052[1] to designate the statewide primary election date starting in June 2022 for its elections or whether the District is required to hold its election on a statewide general election date starting in November 2022.

We conclude the District must hold its election on the statewide general election date starting in November 2022. In 2015 the California Legislature enacted the California Voter Participation Rights Act (§§ 14050-14057) (VPRA). (Stats. 2015, c. 235 (S.B. 415), § 1, eff. Jan. 1, 2016, operative Jan. 1, 2018; hereinafter SB 415.) The primary goal of the VPRA was to increase voter turnout. It mandates that if voter turnout for an election set by a political division that is not on a statewide primary or general election date results in voter turnout that is at least 25 percent less than the average voter turnout within that political subdivision for the previous four statewide general elections, it must change its election date to either the statewide primary or general election date. However, the VPRA did not eradicate all existing voting laws and does not conflict with sections 1303 or 10404, which require that the District set its election date on the statewide general election date.

---

[1] All further statutory references are to the Election Code unless otherwise indicated.

2

## FACTUAL AND PROCEDURAL HISTORY

This case involves a statutory interpretation of the Elections Code. A brief overview of the relevant statutes is helpful in understanding the pleadings filed by the parties. The three most relevant statutes are sections 10404, subdivision (b); 1303, subdivision (b); and 14052, subdivision (a).

Section 14052, subdivision (a), provides in pertinent part, "[A] political subdivision shall not hold an election other than on a statewide election date if holding an election on a nonconcurrent date has previously resulted in a significant decrease in voter turnout."[2] " 'Significant decrease in voter turnout' means the voter turnout for a regularly scheduled election in a political subdivision is at least 25 percent less than the average voter turnout within that political subdivision for the previous four statewide general elections." (§ 14051, subd. (b).) Existing law at the time the VPRA was enacted included section 10404, subdivision (b), which provides in pertinent part, "Notwithstanding any other law, a governing body of a special district may, by resolution, require that its elections of governing body members be held on the same day as the statewide general election." Section 1303, subdivision (b), provides, "Notwithstanding any other provision of law, a governing body of a special district may require, by resolution, that its elections of governing body members be held on the same day as the statewide general election."

---

[2] The VPRA also refers to "on-cycle" and "off-cycle" elections, with the former being an election held at the same time as statewide elections and the latter being elections held on other nonconcurrent dates. (*City of Redondo Beach v. Padilla* (2020) 46 Cal.App.5th 902, 906, fn. 2 (*Redondo Beach*).)

A.  THE COUNTY'S PETITION FOR WRIT OF MANDATE AND

COMPLAINT FOR DECLARATORY RELIEF

On May 14, 2021, the County filed its Petition for Writ of Mandate and Complaint for Declaratory Relief against the District (Petition). The District had submitted to the County Board of Supervisors Resolution 2021-1 (Resolution) seeking approval of changing the District's election date from the existing date of November in odd-numbered years to the statewide primary election date in even-numbered years commencing in June 2022. The County sought emergency relief to order the District to change its election date to the statewide general election beginning in November 2022 and declaratory relief regarding the validity of the Resolution.

The County alleged that the District had been conducting its elections in November of odd-numbered years. The Resolution sought to change the date of elections to even-numbered years on statewide primary elections dates with the first election occurring in June 2022. On February 2, 2021, the County informed the District that it must change its election date to the statewide general election date and not the statewide primary date. On February 19, 2021, the District filed the Resolution with the County's Registrar of Voters and the clerk of the County's Board of Supervisors seeking approval. The County argued that if the Resolution was approved by the Board of Supervisors, it would result in an illegal election. The District refused to change the Resolution. The County alleged that the Registrar of Voters had determined that the average voter turnout for the District's elections in November of odd-numbered years was at least 25 percent less than the turnout for the last four statewide general elections.

4

The County insisted that section 10404, which the District contended was applicable to the District even after the VPRA, made it clear that the District's election must take place on the statewide general election date. The County also referred to section 1303, subdivision (b). The County insisted that these three statutes—the VPRA, section 1303, and section 10404—must be considered as a whole. Section 10404 was applicable to the District because it was a special district and currently held its elections in odd-numbered years.

The County alleged that the VPRA was enacted to increase voter participation by requiring elections to be held on a statewide election date. Further, since the District was required to move its existing election date, sections 10404 and 1303 were not permissive as to the District. The County provided that the voter participation for the prior District election in November 2019 was 10.79 percent. The turnout for the four prior statewide general elections was 61.54 percent. The prior four statewide primary elections had a voter turnout of 32.97 percent. Based on these statistics, voter turnout for statewide general elections was significantly higher and the intent of the VPRA was to increase voter turnout.

The County wanted the trial court to issue an order that the District must amend the Resolution to provide for the District's election be held on the statewide general election date in even-numbered years beginning in November 2022. The County also sought declaratory relief. It desired a judicial determination of the parties' rights and duties with respect to the Resolution and a declaration as to whether the County Board of Supervisors must approve the Resolution.

5

Attached to the Petition was the Resolution.  The Resolution provided in part that the VPRA "prohibits a political subdivision (including a special district) from holding an election on a date other than on a statewide election date in even-numbered years, if holding an election on a non-statewide election date has previously resulted in a 'significant decrease in voter turnout,' which is defined by SB 415 as at 25% less voter turnout than the average voter turnout with the District for the previous four statewide general elections (November, 2010, 2012, 2014, 2016, & 2018).  According to the District voting records, the average eligible voter turnout within the District for the previous four statewide general elections would point to the conclusion that the District is required to change to statewide general election dates in even-numbered years; and [¶] WHEREAS, in order to change its Board of Directors election date to comply with SB 415, Elections Code Section 1301(b) authorizes the District to adopt a resolution changing its district election date from November of off-numbered years to the statewide primary election date of even-numbered years.  The Resolution must then be submitted to the San Bernardino County Board of Supervisors for approval[.]  It intended the change to be effective June 2022.  The Resolution was approved by the District on February 4, 2021.

Attached as Exhibit B to the Petition was a letter from counsel representing the District providing legal authority for changing the election date to the statewide primary date rather than the general election date.  The District alleged the language of VPRA allowed the date to be moved to any "statewide election date."  There was no mandatory change to the statewide general election date.  The District insisted that section 10404 did

6

not apply.  The VPRA was enacted after section 10404.  Further, it only applied to those conducting elections in odd-numbered years and the District was moving its election dates to even-numbered years.

Exhibit C to the Petition was the response from the County to the District that it interpreted the Election Code to require the District to change its election date to the statewide general election date.  It recognized that sections 1303 and 10404 both used the word "may" but they contended, "the codes are permissive because not every District is required to do so, unless the previous election date resulted in a significant decrease in voter turnout."  Further, the legislative intent of the VPRA would be achieved in larger numbers at a statewide general election rather than a statewide primary election.

The Petition also included a declaration from Bob Page who was the Registrar of Voters for the County.  He stated that the turnout for the District's November 5, 2019 election was 10.79 percent.  The average voter turnout for the four prior statewide general elections (2020, 2018, 2016 & 2014) was 61.54 percent.  The average voter turnout for the prior four statewide primary elections in the same four years was 32.97 percent.

B.     THE DISTRICT'S DEMURRER TO THE PETITION

The District filed a demurrer to the Petition on June 30, 2021 (Demurrer).  The District alleged that the County sought to prevent it from exercising its independent statutory right to set its own election dates.

The District offered the undisputed facts that it currently held its election in November of odd-numbered years; the Resolution sought to change the election date to a statewide primary election date in even-numbered years; and the County objected to the

7

Resolution. The only dispute between the parties was whether the District had the right to choose the statewide primary date as the election date.

The District insisted that section 14052, subdivision (a), only required that elections be held on a "statewide election date" and not a statewide general election date. The plain language allowed the District to choose the statewide primary date and no further analysis was required. No other provisions of the Elections Code mandated that the District conduct their election on the statewide general election date.

Finally, the District contended that the County did not have standing to file the Petition. The District alleged that the VPRA, section 14055, only granted standing to registered voters.

C.    COUNTY'S OPPOSITION TO THE DISTRICT'S DEMURRER AND REPLY BY THE DISTRICT

The County responded to the Demurrer. The County insisted that the Resolution thwarted the intent of the VPRA to increase voter participation. Further, once it was determined that the District had to change their election date, they had to comply with section 10404, subdivision (b), which required that the election date be set on the statewide general election date. The County also alleged that according to the legislative history of SB 415, the intent of the VPRA was to maximize the amount of voter participation. The highest voter turnout was on statewide general election dates. The District must change its elections to that date.

The County also insisted that the Elections Code must be harmonized and read as a whole. The language in sections 1303 and 10404 did not allow the District to choose a date other than the statewide general election date in this instance in order to comply with the VPRA's intent to maximize voter turnout. The proper date was the statewide general election date.

As for standing, the County argued they had "associational standing" to bring the Petition. Voters in the District elections were County citizens. The citizens would suffer an injury if the election was to be held on the statewide primary date.

The District filed a reply. The District did not dispute the material facts alleged in the Petition. Further, the District did not dispute that it had to change its election date to a statewide election date. The District contended that "statewide election date" meant both statewide general election date and statewide primary election date. The District contended that section 10404 did not apply on its face to the District since it had already chosen to change its election date in compliance with section 14052. Section 14052 governed the right of the District to select an election date.

D.     STIPULATED JUDGMENT

The trial court initially issued a tentative ruling denying the demurrer and determined resolution of the matter was to be decided by summary judgment or trial. However, a hearing was conducted, and apparently the parties asked the court to enter a

judgment as the matter was strictly a matter of statutory interpretation. They agreed to a stipulated judgment to resolve the matter.[3]

The trial court found, "The Resolution is invalid because Elections Code section 1303, 10404, and 14052, when harmonized, require the District to hold its elections on the date of the statewide general election in even-numbered years to fulfill the intent of the California Voter Participation Rights Act (VPRA) to maximize voter participation in elections."

The trial court referred to the legislative history of section 1303. When section 1303 was introduced, the existing law required that general district elections be conducted on the first Tuesday following the first Monday in November of each odd-numbered year. Section 1303 sought to "except from this requirement districts whose principal act provides for another election date under specified provisions of law, . . . and districts that require, by resolution that would become operative upon approval by the board of supervisors, its governing body elections to be held on the same day as the statewide general election." The trial court concluded, "[C]ontrary to the District's assertions, the permissive language in subdivision (b) of 1303 is not all encompassing, but pertains specifically to exceptions to the requirement that special districts hold their elections on the first Tuesday in November of odd-numbered years. . . . [it] did not include language contemplating that special districts hold their elections on statewide *primary* election dates."

---

[3] The District chose to proceed on appeal without the oral proceedings so it is not clear what occurred at the hearing.

10

The VPRA was enacted after section 1303, and does not conflict with section 1303. The VPRA was a general statute that applied to all political subdivisions. It was to be read in conjunction with all the statutes that govern when any political subdivision can hold its elections. The trial court understood section 14052 to allow the District to hold its election on either the statewide primary or general election date.

The trial court held, "Nevertheless, this general reference to a 'statewide election date' in section 14052, subdivision (a), does not override the specific reference in section 1303, subdivision (b), to a special district being allowed to adopt a resolution requiring its elections to be held on the day of a "statewide *general* election.' As noted above, the legislative intent in amending section 1303 and adding subdivision (b), was to allow special districts to hold their elections on dates other than the first Tuesday in November of odd-numbered years. But the permission only allowed for specific exceptions. Holding special district elections on statewide *primary* election dates was not one of the stated exceptions." The stipulated judgment was filed on December 10, 2021. The District filed an appeal.

## DISCUSSION

The District insists that section 14052 allows it to choose between the statewide primary election date or the statewide general election date for its election and that sections 1303 and 10404 do not mandate otherwise. The District asks this court to reverse the stipulated judgment and allow it to set its election date as the statewide primary date. The County contends the issue is whether the general reference to "statewide election date" in section 14052, subdivision (a), overrides the specific

11

reference in sections 1303, subdivision (b), and 10404, subdivision (b), to a special district being allowed to adopt a resolution requiring its elections to be held on the day of a statewide general election date. The County acknowledges the language of section 14052, subdivision (b), allows for the nonconcurrent date to be moved to either the statewide primary or general election date. However, based on the voter turnout, the District had to move the date to the statewide general election date because it would maximize voter turnout.

A.     STANDING

Initially we note that on appeal the District raises the issue that the County lacked standing to bring the Petition. The District raised this issue in its Demurrer. However, the stipulated judgment did not address standing. By failing to seek a ruling in the lower court, the District has waived their claim of standing on appeal. (See *Araiza v. Younkin* (2010) 188 Cal.App.4th 1120, 1127 ["A party who fails to alert the trial court to an issue that has been left unresolved forfeits the right to raise that issue on appeal"].)

B.     ELECTION DATE

"It is well established the applicability of a statute to undisputed facts is a question of law and a reviewing court is not bound by the trial court's conclusion." (*County of Fresno v. Clovis Unified School District* (1988) 204 Cal.App.3d 417, 426.)

"The rules governing statutory construction are well settled. We begin with the fundamental premise that the objective of statutory interpretation is to ascertain and effectuate legislative intent. [Citations.] To determine legislative intent, we turn first to the words of the statute, giving them their usual and ordinary meaning." (*Nolan v. City of*

12

*Anaheim* (2004) 33 Cal.4th 335, 340.) "When the language of the statute is clear, we need go no further." (*Id.* at p. 340.)

" 'The "plain meaning" rule, however, "does not prohibit a court from determining whether the literal meaning of a statute comports with its purpose or whether such a construction of one provision is consistent with other provisions of the statute. The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible.' " (*City of Torrance v. Southern California Edison Company* (2021) 61 Cal.App.5th 1071, 1084-1085.) "Statutory sections relating to the same subject matter must be harmonized, both internally and with each other, to the extent possible." (*Albillo v. Intermodal Container Services, Inc.* (2003) 114 Cal.App.4th 190, 200; see also *Moore v. Panish* (1982) 32 Cal.3d 535, 541.) "At all times, '[o]ur foremost task remains ascertainment of the legislative intent, including consideration of "the entire scheme of law of which it is a part so that the whole may be harmonized and retain effectiveness." ' " (*Albillo*, at p. 200.)

We first look to the VPRA and the statutory language of section 14052. "In 2015 the California Legislature enacted . . . the [VPRA] to remedy the typically low voter turnout in off-cycle local elections. The VPRA requires political subdivisions in the state to consolidate local elections with statewide on-cycle elections if the local jurisdiction's turnout falls at least 25 percent below the locality's average voter turnout in the previous

four statewide general elections." (*Redondo Beach*, *supra*, 46 Cal.App.5th at p. 906.)[4] The VPRA became operative January 1, 2018. (*Ibid*.) "Section 14052, subdivision (a), provides that 'a political subdivision shall not hold an election other than on a statewide election date if holding an election on a nonconcurrent date has previously resulted in a significant decrease in voter turnout.' A ' "[p]olitical subdivision" ' is defined as 'a geographic area of representation created for the provision of government services, including, but not limited to, a city, a school district, a community college district, or other district organized pursuant to state law.' " (*Id*. at pp. 906-907.) The plain language of the statute makes clear that the purpose of the VPRA is to increase voter turnout and applies to the District.

The definition of statewide election is found in section 1001, which provides, "The following are statewide elections and their dates are statewide election dates: [¶] (a) An election held in November of an even-numbered year. [¶] (b) An election held in June of an even-numbered year that is not evenly divisible by four and in March of each even-numbered year that is evenly divisible by four."

Based on the language in section 14052, the District could hold its election on the statewide primary or general election date if it had a significant decrease in voter turnout on its nonconcurrent date. We do not interpret section 14052 to require the District to choose the statewide general election date if the turnout is higher than in a statewide primary election. The plain language of the VPRA does not so provide. However,

---

[4] *Redondo Beach* is the only published case addressing the VPRA. It involved whether the VPRA applied to charter cities.

section 14052 should not be viewed in isolation. The trial court concluded that section 1303 applies to give the District the only option that it hold its election on a statewide general election date.

As stated, section 1303 provides: "(a) Unless the principal act of a district provides that an election shall be held on one of the other dates specified in Chapter 1 (commencing with Section 1000)[5] of Division 1, or except as provided in Section 1500,[6] or except as provided in subdivision (b), a general district election to elect members of the governing board shall be held in each special district subject to Division 10 (commencing with Section 10000) on the first Tuesday following the first Monday in November of each odd-numbered year. [¶] (b) Notwithstanding any other provision of law, a governing body of a special district may require, by resolution, that its elections of governing body members be held on the same day as the statewide general election. The resolution shall become operative upon the approval of the board of supervisors pursuant to Section 10404."

Sections 1303 and 14052 are not in conflict. The District could comply with both sections. Section 14052 only requires the District to change its election date if there is a significant decrease in voter turnout as defined in section 14051. Had the District been able to show that the turnout during the odd-numbered November years did not have a

_____

[5] Section 1000 sets forth several election dates. Section 1003 sets forth those elections to which the chapter does not apply, which include elections by mailed ballot, elections in charter cities and any special election held by the Governor. None of these exceptions apply to the instant case.

[6] Section 1500 provides established mailed ballot election dates.

15

significant decrease in voter turnout, it could keep its election date.  However, as the evidence offered below showed, the turnout for the District's elections was just 10 percent, and the statewide general election date brought in over 60 percent of the voters from the political subdivision.  As such, the District was required to changes its election date.  The only exception provided by section 1303 was to choose the statewide general election date.  No language in the VPRA supports that it was intended to replace section 1303, subdivision (b), with the choice between the statewide primary and general election dates.  Further, this interpretation supports the intent of the Legislature to increase voter turnout.

If this court were to view section 14052 in isolation, we may agree with the District that it could choose either the statewide or primary election date.  However, we must harmonize section 14052 with the entirety of the Election Code.  As such, section 1303 provides only one exception to the holding of an election on an odd-numbered year: the statewide general election date.  (§ 1303, subd. (b).)

The District contends that once section 14052 was adopted, it became part of the District's "principal act" as that term is used in section 1303, subdivision (a).  The District relies on section 10500, subdivision (b)(9).  Section 10500, subdivision (b)(9) provides, " 'Principal act' means the law providing for the creation of a particular district or agency or type of district or agency."  The VPRA was not the law that created the District.  This law has no relation as to whether section 14052 or section 1303, or both, apply in determining election dates.

16

Further, section 10404 supports that the District could only hold its election on a statewide general election date. Subdivision (a) of section 10404 provides "This section applies only to special districts electing members of the governing body in odd-numbered years." Here, once the District determined it must move its election date to the statewide primary election date, it rendered section 10404, subdivision (a), inapplicable. If section 10404 was applicable, section 10404, subdivision (b), only provides an exception to move the date to a statewide general election date. Like section 1303,[7] the District's Resolution could only seek to move the election date to the statewide general election date, and not the statewide primary election date.

Based on the foregoing, section 14052 mandates all political subdivisions move their election dates to the statewide primary or general election date if the voter turnout for a nonconcurrent date had voter turnout of at least 25 percent less than the previous four statewide general elections. Once the District was required to change its election date, it then was subject to the more specific section 1303 in which the only applicable exception to holding an election in the odd-numbered years in November was the statewide general election date.

Although not necessary, "[W]e may consider legislative history where it buttresses our interpretation of the plain meaning of a statute." (*Albillo v. Intermodal Container Services, Inc.*, *supra*, 114 Cal.App.4th at p. 203.)

---

[7] Section 1303 refers to section 10404 but only to establish the process of approval in front of the board of supervisors.

17

The legislative history of SB 415 indicated that it was to add Chapter 1.7 commencing with section 14050 to Division 14 of the Elections Code. According to the text of SB 415, it was enacted because "Existing law generally requires all state, county, municipal, district, and school district elections be held on an established election date. Existing law also establishes certain dates for statewide elections. Existing law requires any state, county, municipal, district, and school district election held on a statewide election date be consolidated with a statewide election, except as provided. [¶] This bill, commencing January 1, 2018, would prohibit a political subdivision, as defined, from holding an election other than on a statewide election date if holding an election on a nonconcurrent date has previously resulted in voter turnout for a regularly scheduled election in that political subdivision being at least 25% less than the average voter turnout within the political subdivision for the previous 4 statewide general elections, except as specified."[8] Nothing in the legislative history established that section 14052 was meant to replace or eliminate any existing Election Code sections.

The purpose of the VPRA was, "According to the author, 'Voter turnout in local elections held on odd-numbered years has been abysmal. On average, less than 30% of registered voters have come out to vote in local odd-year elections. As a result of low voter turnout, the voting population often does not look like the general public as a whole and neither does the city council. While there is no silver bullet, one way to increase voter turnout in local elections is to hold them concurrently with statewide and federal

---

[8] Text of SB 415, p. 1 <https://leginfo.legislature.ca.gov/faces/billTextClient. xhtml?bill_id=201520160SB415> [as of February 1, 2022].

18

elections, where voter turnout is often twice as high. Elections held on the same date can help reduce voter fatigue and make voting more habit forming, while saving local government on administrative costs." (Senate Third Reading, Sen. Bill No. 415 (2015-2016 Reg. Sess.) as amended June 23, 2015, pp. 1-2.) The legislative history supports the purpose was to increase voter turnout and there was no mandate that the primary election date had to be chosen. Existing law, not eradicated by section 14052, could establish that the District had to choose the statewide general election date and not the statewide primary date.

The District contends that section 1303 was superseded by the VPRA. However, there is nothing in the legislative history of section 14052 which provides that it impacts section 1303. It was noted, "[I]n practice, this bill may force almost all local jurisdictions to hold their regularly scheduled elections as the same time as statewide elections." (Senate Third Reading, Sen. Bill No. 415 (2015-2016 Reg. Sess.) as amended June 23, 2015, p. 2.) This language supports that the VPRA was not mandatory but allowed for those political subdivisions to set election dates under the law existing at the time the VPRA was enacted if there was no decrease in voter turnout. Further, once the District was required to change its election date by section 14052, it could only adopt a resolution that set the election date on the statewide general election date under section 1303, subdivision (b).

The prime goal of the VPRA is to increase voter turnout. The VPRA did not eradicate all existing voting laws and does not conflict with sections 1303 or 10404. The District was required to change its election date pursuant to section 14052, and it was

19

subject to section 1303 which provided only one alternative date of the statewide general election date.

## DISPOSITION

The stipulated judgment is affirmed.

CERTIFIED FOR PUBLICATION

MILLER
J.

We concur:

McKINSTER
Acting P. J.

CODRINGTON
J.